IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDY BIGGS; ANDY TOBIN; NANCY BARTO; JUDY BURGES;
CHESTER CRANDELL; GAIL GRIFFIN; AL MELVIN; KELLI WARD;
STEVE YARBROUGH; KIMBERLY YEE; JOHN ALLEN; BRENDA
BARTON; SONNY BORRELLI; PAUL BOYER; KAREN FANN; EDDIE
FARNSWORTH; THOMAS FORESE; DAVID GOWAN; RICK GRAY;
JOHN KAVANAGH; ADAM KWASMAN; DEBBIE LESKO; DAVID
LIVINGSTON; PHIL LOVAS; J.D. MESNARD; DARIN MITCHELL;
STEVE MONTENEGRO; JUSTIN OLSON; WARREN PETERSEN; JUSTIN
PIERCE; CARL SEEL; STEVE SMITH; DAVID STEVENS; BOB THORPE;
KELLY TOWNSEND; MICHELLE UGENTI; JEANETTE DUBREIL;
KATIE MILLER; TOM JENNEY, *Petitioners*,

*v.*

THE HONORABLE KATHERINE COOPER, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, Respondent Judge,

JANICE K. BREWER, in her official capacity as Governor of Arizona;
THOMAS J. BETLACH, in his official capacity as Director of the Arizona
Health Care Cost Containment System, *Real Parties in Interest*.

No. 1 CA-SA 14-0037
FILED 4-22-2014

Petition for Special Action from the Superior Court in Maricopa County
No. CV2013-011699
The Honorable Katherine M. Cooper, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART AND
DENIED IN PART**

COUNSEL

Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix
By Clint Bolick, Kurt M. Altman, Christina Sandefur
*Counsel for Petitioners*

Fennemore Craig, P.C. Phoenix
By Patrick Irvine, Timothy J. Berg, Carrie Pixler Ryerson, Douglas C. Northup
*Counsel for Real Parties in Interest Governor Janice K. Brewer and Thomas J. Betlach*

Office of Governor Janice K. Brewer, Phoenix
By Joseph Sciarrotta, Jr.
*Co-Counsel for Real Party in Interest Governor Janice K. Brewer*

---

**OPINION**

Acting Presiding Judge John C. Gemmill delivered the opinion of the Court, in which Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**G E M M I L L**, Judge:

¶1          Petitioners are thirty-six members of the Arizona Legislature ("plaintiff legislators"), two constituents whose representatives voted against the bill at issue ("plaintiff constituents"), and a taxpayer seeking to bring suit pursuant to Arizona's private attorney general statute ("taxpayer Jenney") (collectively "Plaintiffs"). Together, they sought to enjoin enforcement and challenge the constitutionality of "Arizona's expanded Medicaid program" as set forth in Arizona Revised Statutes ("A.R.S.") sections 36-2901.08 and -2901.09. Real Parties in Interest are Governor Janice K. Brewer, in her official capacity as Governor of Arizona and Thomas J. Betlach, in his official capacity as Director of the Arizona Health Care Cost Containment System ("AHCCCS") (collectively "Defendants"). Upon dismissal of Plaintiffs' action for lack of standing, Plaintiffs both appealed and filed this special action petition. For the following reasons, we accept special action jurisdiction, dismiss Plaintiffs' contemporaneous appeal as moot, grant relief from the trial court's ruling regarding standing of the plaintiff legislators, deny relief from the trial

court's standing determination regarding plaintiff constituents and taxpayer Jenney, and remand for further proceedings.

## BACKGROUND

¶2        House Bill 2010 § 5 ("HB 2010"), which created A.R.S. § 36-2901.08, was passed in both chambers of the Arizona legislature by a simple majority vote and signed into law by the Governor in June 2013. Section 36-2901.08, in relevant part, authorizes the director of AHCCCS to "establish, administer and collect an assessment on hospital revenues, discharges or bed days for the purpose of funding the nonfederal share of the costs," with several exceptions. A.R.S. § 36-2901.08(A). The nature of this "assessment" is the foundation of Plaintiffs' complaint; specifically, Plaintiffs contend that the bill imposes a new tax on hospitals as a funding mechanism for the expansion of Arizona's Medicaid program. Accordingly, Plaintiffs assert that the bill was subject to passage by a two-thirds supermajority of each legislative chamber in accordance with Article 9, Section 22 of the Arizona Constitution.

¶3        Defendants moved to dismiss Plaintiffs' complaint for lack of standing and because, in their view, subsection (D) of Article 9, Section 22 grants the legislature the sole authority to determine when a bill is subject to passage by a two-thirds supermajority. The trial court adopted Defendants' arguments and dismissed the complaint. Plaintiffs filed this special action asking this court to reverse the trial court and also to consider addressing the merits of their complaint.

## SPECIAL ACTION JURISDICTION

¶4        Accepting special action jurisdiction is highly discretionary with the reviewing court. *Randolph v. Groscost*, 195 Ariz. 423, 425, ¶ 6, 989 P.2d 751, 753 (1999). Arizona courts generally hold that special action jurisdiction is appropriate in matters of statewide importance, where the issues presented are purely legal questions or, as here, the issues presented "turn on interpreting Arizona's Constitution." *Dobson v. State ex rel. Comm'n on Appellate Court Appointments*, 233 Ariz. 119, 121, ¶ 7, 309 P.3d 1289, 1291 (2013). Although Plaintiffs have filed a contemporaneous notice of appeal that also challenges the trial court's dismissal of their complaint, we view the trial court's interpretation of Article 9, Section 22 of the Arizona Constitution and the resulting determination of standing concerning the plaintiff legislators as pure legal issues of sufficient urgency and statewide importance to be appropriately decided at this

stage. *See Ariz. Corp. Comm'n v. State ex rel. Woods*, 171 Ariz. 286, 288, 830 P.2d 807, 809 (1992). The issues presented in this litigation have potentially important ramifications for Arizona's state budget and may impact a portion of Arizona citizens who rely on Medicaid and the state agencies that operate it. *See League of Ariz. Cities and Towns v. Martin*, 219 Ariz. 556, 558, ¶ 4, 201 P.3d 517, 519 (2009) (noting that disputes impacting the state budget are appropriate for special action review); *see also State Comp. Fund v. Symington*, 174 Ariz. 188, 192, 848 P.2d 273, 277 (1993) (observing that budget issues are entitled to "prompt resolution" so that the legislative and executive branches "will know where they stand" and be able to act accordingly.). For these reasons, we choose in our discretion to exercise special action jurisdiction.

## ANALYSIS

¶5        The trial court ruled that the Legislature has the power to decide whether a bill must be passed by a two-thirds supermajority of both legislative chambers and that Plaintiffs therefore lack standing to bring this constitutional challenge to HB 2010. Although standing questions are usually resolved before substantive questions, *see Brewer v. Burns*, 222 Ariz. 234, 237-39, ¶¶ 10-22, 213 P.3d 671, 674-76 (2009), the legal basis for the trial court's ruling compels us to review its substantive ruling as a predicate to our review of the standing issue. We do not, however, reach the ultimate constitutional question of whether HB 2010 was subject to the requirements of Article 9, Section 22 of the Arizona Constitution.

## I.        Article 9, Section 22 of the Arizona Constitution

¶6        We begin our de novo review by first addressing the trial court's interpretation of Article 9, Section 22(D) of the Arizona Constitution. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, 344, ¶ 14, 121 P.3d 843, 850 (App. 2005) (noting de novo review of a trial court's constitutional interpretation). The voters of Arizona amended the Arizona Constitution in 1992 to add Article 9, Section 22, which provides:

> (A) An act that provides for a net increase in state revenues, as described in subsection B is effective on the affirmative vote of two-thirds of the members of each house of the legislature. If the act receives such an affirmative vote, it becomes effective immediately on the signature of the governor as provided by article IV, part 1, section 1. If the governor vetoes the measure, it shall not become effective

unless it is approved by an affirmative vote of three-fourths of the members of each house of the legislature.

(B) The requirements of this section apply to any act that provides for a net increase in state revenues in the form of:

1. The imposition of any new tax.

2. An increase in a tax rate or rates.

3. A reduction or elimination of a tax deduction, exemption, exclusion, credit or other tax exemption feature in computing tax liability.

4. An increase in a statutorily prescribed state fee or assessment or an increase in a statutorily prescribed maximum limit for an administratively set fee.

5. The imposition of any new state fee or assessment or the authorization of any new administratively set fee.

6. The elimination of an exemption from a statutorily prescribed state fee or assessment.

7. A change in the allocation among the state, counties or cities of Arizona transaction privilege, severance, jet fuel and use, rental occupancy, or other taxes.

8. Any combination of the elements described in paragraphs 1 through 7.

(C) This section does not apply to:

1. The effects of inflation, increasing assessed valuation or any other similar effect that increases state revenue but is not caused by an affirmative act of the legislature.

2. Fees and assessments that are authorized by statute, but are not prescribed by formula, amount or limit, and are set by a state officer or agency.

3. Taxes, fees or assessments that are imposed by counties, cities, towns and other political subdivisions of this state.

(D) Each act to which this section applies shall include a separate provision describing the requirements for enactment prescribed by this section.

¶7        In dismissing Plaintiffs' complaint, the trial court held that "[w]hether a bill is subject to [Article 9, Section 22] is determined by the Legislature itself," evidently relying on Defendants' argument that subsection (D) granted such power to the Legislature. Defendants urge this court to affirm that holding, arguing that whether to include language in a bill pursuant to subsection (D) is an "official decision of each chamber" that falls under the purview of Article 4, Part 2, Section 8 of the Arizona Constitution, which grants each legislative chamber the power to "determine its own rules of procedure." Essentially, Defendants argue that whether a bill must be passed in accordance with Article 9, Section 22 is a political question not reviewable by the courts.

¶8        Generally, political questions "involve decisions that the constitution commits to one of the political branches of government and raise issues not susceptible to judicial resolution according to discoverable and manageable standards." *Forty-Seventh Legislature of State v. Napolitano*, 213 Ariz. 482, 485, ¶ 7, 143 P.3d 1023, 1026 (2006). The manner in which the legislature conducts its business is usually a political question. *See Burns*, 222 Ariz. at 239, ¶ 21, 213 P.3d at 676; *Forty-Seventh Legislature*, 213 Ariz. at 485, ¶ 7, 143 P.3d at 1026. In this situation, however, the Arizona Constitution imposes a "discoverable and manageable standard" — namely, that a bill providing "for a net increase in state revenues," as described in subsection (B) of Article 9, Section 22 and not excluded by subsection (C), must be passed by a supermajority of each legislative chamber in accordance with subsection (A).

¶9        We reject the argument that Article 9, Section 22(D) grants the legislature sole power to dictate when and if a bill is subject to passage by a two-thirds supermajority under the Arizona Constitution. Rather, subsection (D) requires simply that, if a bill imposes measures raising revenues of the type listed in subsection (B), "a separate provision" must be added to the bill's language that denotes that the bill must be enacted in accordance with subsection (A)'s two-thirds supermajority

requirement. We reach this conclusion because the plain language of Article 9, Section 22(A)-(C) reveals that Section 22 is a limitation on the legislature's power to pass certain revenue raising measures. To interpret subsection (D) as giving a bare majority in each chamber of the legislature the authority to determine when a bill must be passed by a supermajority eliminates Article 9, Section 22's ability to act as a limiting provision on the legislature's power. *See Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 437 (1947) (explaining that "state constitutions are not grants of power, but instead are limitations thereof"); *Cave Creek Unified School District v. Ducey*, 233 Ariz. 1, 5, ¶ 13, 308 P.3d 1152, 1156 (2013) (observing "[o]ur state constitution, unlike the federal constitution, does not grant power, but instead limits the exercise and scope of legislative authority").

¶10 The absence of the required "separate provision" may mean that a majority of legislators did not decide that the constitutional supermajority vote was required, but subsection (D) does not bestow upon the legislature the sole power to decide whether a supermajority vote is mandated. Subsection (D)'s meaning must be determined in light of subsection (A)'s unambiguous requirements. Even if subsection (D)'s meaning — in isolation — may not be clear, the four subsections must be construed together to achieve the intended effect of the language and requirements of Section 22 as a whole. *See State ex rel. Jones v. Lockhart*, 76 Ariz. 390, 398, 265 P.2d 447, 452-53 (1953) (noting that constitutional provisions must be analyzed by "the whole of the provision and its relation to other parts of the Constitution"); *Kilpatrick v. Superior Court In and For Maricopa County*, 105 Ariz. 413, 418, 466 P.2d 18, 24 (1970) (observing that "we would be compelled to construe [two sections of the Arizona constitution] together for constitutions must be construed as a whole and their various parts read together"). It follows, then, that subsection (D) cannot vitiate the legislature's obligation to follow the requirements established by subsection (A) when applicable. *See State v. Montes*, 226 Ariz. 194, 198, ¶ 18, 245 P.3d 879, 883 (2011) (noting that even if one part of a provision is ambiguous standing alone, the provision "does not undermine" the effect of other unambiguous parts of the enactment).

¶11 A hypothetical example is instructive here. If the legislature considered a bill that would increase state revenues by raising the state income tax rates, such a bill would presumably fall within the purview of Article 9, Section 22(A) and (B). Even if the legislature did not enact a "separate provision describing the requirements for enactment prescribed by this section" as subsection (D) requires, such an omission would not

defeat the constitution's requirement that any bill raising the state income tax rates be passed by a two-thirds supermajority of each legislative chamber.

¶12     For these reasons, we conclude that Article 9, Section 22(D) does not grant sole authority to the legislature to decide when a supermajority vote is required to increase existing taxes or impose new taxes.  Accordingly, the trial court erred in holding that the legislature alone determines whether a bill must be passed by a two-thirds supermajority vote of each chamber in accordance with Article 9, Section 22.

## II.     Standing

### A.     Legislators

¶13     The trial court found that Plaintiffs have no standing to challenge the constitutionality of A.R.S. § 36-2901.08, concluding instead that they "[sue] because a majority of the Legislature voted not to impose the requirement" that HB 2010 be passed by a two-thirds supermajority. In Arizona, standing is "not jurisdictional, but instead is a prudential doctrine requiring 'a litigant seeking relief in the Arizona courts [to] first establish standing to sue.'"  *Dobson*, 233 Ariz. at 122, ¶ 9, 309 P.3d at 1292 (quoting *Bennett v. Napolitano*, 206 Ariz. 520, 525, ¶ 19, 81 P.3d 311, 316 (2003)).  Arizona courts may waive standing requirements in exceptional circumstances or in cases of great public importance that are likely to recur.  *Sears v. Hull*, 192 Ariz. 65, 71, ¶ 25, 961 P.2d 1013, 1019 (1998).

¶14     The trial court correctly noted that, generally, legislators do not possess standing to sue unless their alleged injury is "particularized" to a "private right."  *See Bennett*, 206 Ariz. at 526-27, ¶ 28, 81 P.3d at 317-18.  The *Bennett* case, however, recognizes an exception to this general rule as established by two United States Supreme Court opinions.  In *Raines v. Byrd*, 521 U.S. 811 (1997), the Court considered whether several individual members of Congress could challenge the constitutionality of an act that Congress had passed and the plaintiff members had voted against. Holding that the individual members had no standing, the Court concluded that the alleged injury was "based on a loss of political power, not loss of any private right."  *Id.* at 821.  The Court distinguished this holding from its decision in *Coleman v. Miller*, 307.U.S. 433 (1939).  In *Coleman*, a majority of the Court agreed that a group of plaintiff legislators had standing to challenge whether a measure had been passed in a

constitutional manner, noting that, if the plaintiffs' allegation was true, their "votes against ratification [had] been overridden and virtually held for naught although . . . their votes would have been sufficient to defeat ratification." *Id.* at 438; *see also Raines*, 521 U.S. at 822 n.5. In recognizing *Coleman* and *Raines*, the Arizona Supreme Court ultimately concluded that the plaintiff legislators in *Bennett* were alleging an injury that more rightly resembled a "loss of political power" as analyzed in *Raines,* and as a result they lacked standing. *Bennett*, 206 Ariz. at 526-27, ¶ 28, 81 P.3d at 317-18.

¶15 The trial court here, relying on *Bennett*, similarly concluded that the plaintiff legislators' alleged injury was a result of a "lost battle" over the passage of HB 2010. If, however, HB 2010 was constitutionally required to be passed by a supermajority of both legislative chambers, the plaintiff legislators experienced an unconstitutional "overriding" that "virtually held [their votes] for naught." *See Coleman*, 307 U.S. at 438. We conclude, therefore, that standing is proper for the plaintiff legislators under the *Coleman* analysis, as recognized in *Bennett*.

¶16 We do not believe, as Defendants claim, that declaring standing in this case for the plaintiff legislators greatly expands the holding of *Bennett,* nor should it open the proverbial floodgates for legal challenges against bills passed by the legislature. Rather, we apply to these specific facts the distinction regarding standing recognized by the United States Supreme Court in *Coleman* and the Arizona Supreme Court in *Bennett*. Legislators, like private citizens, have a constitutional right to have their votes count a certain amount, and if a vote is properly alleged to have counted less than the constitutionally required amount, standing exists to claim a constitutional injury. *Bennett,* 206 Ariz. at 525-26, 81 P.3d 311 at 316-17; *Coleman*, 307 U.S. at 438*; see Baker v. Carr*, 369 U.S. 186, 207-08 (1962) (noting standing for citizens on questions of voter "impairment," including "dilution by a false tally"); *cf. Gray v. Sanders*, 372 U.S. 368 (1963) (holding as unconstitutional an electoral system in which votes were counted equally but weighed unequally).

¶17 Plaintiffs contend that we should also decide the ultimate issue of whether HB 2010 was subject to passage by a two-thirds supermajority, but in our discretion we decline to do so. Whether the bill properly falls within Article 9, Section 22(B) or (C) may include factual determinations that the trial court should address in the first instance. Defendants have expressed a desire to develop a record on the merits, and we are reluctant to rule on a basis neither fully briefed nor addressed by the trial court. Accordingly, we remand this action for further

proceedings.  By deciding that the plaintiff legislators have standing to raise the *question* whether their votes were given the effect to which they were constitutionally entitled, we express no opinion on the merits of whether a supermajority vote of each chamber was required to pass HB 2010.

## B.  Constituents

**¶18**        We next review whether the plaintiff constituents have standing to challenge the constitutionality of A.R.S § 36-2901.08.   To establish standing, plaintiffs must allege "a distinct and palpable injury" that goes beyond an "allegation of generalized harm that is shared alike by all or a large class of citizens."  *Sears*, 192 Ariz. at 69, ¶ 16, 961 P.2d at 1017.  Because the statutes these plaintiff constituents seek to challenge do not directly apply to them and they are fully represented in the legislature, we affirm the trial court's holding that no distinct and palpable injury has been established to support standing.

## C.  Taxpayer Jenney

**¶19**        In reviewing whether taxpayer Jenney may bring an action to challenge A.R.S. § 36-2901.08 pursuant to A.R.S. §§ 35-212(A) and -213, we conclude that the trial court correctly ruled that standing for taxpayer Jenney is not proper.  Sections 35-212 and -213 specifically provide for "an action to prevent the illegal payment of monies or to recover monies alleged to be illegally paid."  *State ex. rel. Woods v. Block*, 189 Ariz. 269, 272, 942 P.2d 428, 431 (1997).  In *Block*, the supreme court held that the Attorney General, under A.R.S. § 35-212, had standing to challenge the statutory power of a legislatively created entity to spend funds in implementing its mission.  *Id.* at 274, 942 P.2d at 433.  In this case, however, the statutes that taxpayer Jenney seeks to challenge do not grant an express expenditure power as did the statutes reviewed in *Block*.  Although the supreme court rejected the argument that the Attorney General did not have standing because he failed to "specifically challenge[] any particular expenditure of funds," *id.*, the statutes at issue in *Block* distinctly granted an expenditure power that was traceable and identifiable.  As such, *Block* does not interpret A.R.S. § 35-212 to mean, as Plaintiffs assert, that specific expenditure challenges are categorically not required to establish standing for the Attorney General.  Rather, the *Block* court observed that, because a specific expenditure power existed in the statutes at issue in that case, the Attorney General's challenge of those statutes "necessarily includes a request to prohibit payment" in exercise of

that power.  *Id.*  No such express expenditure power exists in the statutes at issue here.  And regardless of whether A.R.S. § 36-2901.08 imposes a tax or assessment, the collection of funds authorized by this statute does not establish any identifiable payment that may be prevented or recovered.

## CONCLUSION

**¶20**        We accept jurisdiction over this special action.  We deny relief from and affirm the trial court's ruling denying standing for the plaintiff constituents and taxpayer Jenney.  We grant relief from and reverse the trial court's ruling denying standing for the plaintiff legislators.  Plaintiff legislators have standing to bring this challenge.  We also hold that Article 9, Section 22(D) of the Arizona Constitution does not vest in the legislature the sole power to determine when a two-thirds supermajority vote of each legislative chamber is required under the constitution for passage of legislation.  We dismiss as moot the appeal filed by Plaintiffs, our cause number 1 CA-CV 14-0180.  And we remand this action to the trial court for further proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
FILED: MJT

11