IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

ANDY BIGGS; ANDY TOBIN; NANCY BARTO; JUDY BURGES;
CHESTER CRANDELL; GAIL GRIFFIN; AL MELVIN; KELLI WARD;
STEVE YARBROUGH; KIMBERLY YEE; JOHN ALLEN; BRENDA BARTON;
SONNY BORRELLI; PAUL BOYER; KAREN FANN; EDDIE FARNSWORTH;
THOMAS FORESE; DAVID GOWAN; RICK GRAY; JOHN KAVANAGH;
ADAM KWASMAN; DEBBIE LESKO; DAVID LIVINGSTON; PHIL LOVAS;
J.D. MESNARD; DARIN MITCHELL; STEVE MONTENEGRO; JUSTIN OLSON;
WARREN PETERSEN; JUSTIN PIERCE; CARL SEEL; STEVE SMITH;
DAVID STEVENS; BOB THORPE; KELLY TOWNSEND; MICHELLE UGENTI;
JEANETTE DUBREIL; KATIE MILLER; TOM JENNEY,
*Petitioners*,

*v.*

THE HONORABLE KATHERINE COOPER, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Judge*,

JANICE K. BREWER, IN HER OFFICIAL CAPACITY AS GOVERNOR OF ARIZONA;
THOMAS J. BETLACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE
ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM,
*Real Parties in Interest*.

No. CV-14-0132-PR
Filed December 31, 2014

Appeal from the Superior Court in Maricopa County
The Honorable Katherine M. Cooper, Judge
No. CV2013-011699
**REVERSED IN PART; REMANDED**

Opinion of the Court of Appeals, Division One
234 Ariz. 515, 323 P.3d 1166 (2014)
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

Clint Bolick, Kurt M. Altman, and Christina Sandefur (argued), Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Andy Biggs; Andy Tobin; Nancy Barto; Judy Burges; Chester Crandell; Gail Griffin; Al Melvin; Kelli Ward; Steve Yarbrough; Kimberly Yee; John Allen; Brenda Barton; Sonny Borrelli; Paul Boyer; Karen Fann; Eddie Farnsworth; Thomas Forese; David Gowan; Rick Gray; John Kavanagh; Adam Kwasman; Debbie Lesko; David Livingston; Phil Lovas; J.D. Mesnard; Darin Mitchell; Steve Montenegro; Justin Olson; Warren Petersen; Justin Pierce; Carl Seel; Steve Smith; David Stevens; Bob Thorpe; Kelly Townsend; Michelle Ugenti; Jeanette Dubreil; Katie Miller; Tom Jenney

Douglas C. Northup, Timothy Berg (argued), Patrick Irvine, and Carrie Pixler Ryerson, Fennemore Craig, P.C., Phoenix, Attorneys for Governor Janice K. Brewer and Director Thomas J. Betlach; and Joseph Sciarrotta, Jr., Office of Governor Janice K. Brewer, Phoenix, Co-Counsel for Governor Janice K. Brewer

Timothy M. Hogan and Joy Herr-Cardillo, Arizona Center for Law in the Public Interest, Phoenix; and Ellen Sue Katz, William E. Morris Institute for Justice, Phoenix, Attorneys for Amici Curiae Arizona Center for Law in the Public Interest and The William E. Morris Institute for Justice

Kory A. Langhofer and Thomas J. Basile, Brownstein Hyatt Farber Schreck, LLP, Phoenix, Attorneys for Amici Curiae Arizona Hospital and Healthcare Association, Abrazo Health Care, Banner Health, and Dignity Health

Joseph A. Kanefield and Brunn W. Roysden, III, Ballard Spahr LLP, Phoenix, Attorneys for Amici Curiae Fife Symington, III, et al.

James S. Burling, Pacific Legal Foundation, Sacramento, CA, Attorneys for Amicus Curiae Pacific Legal Foundation

Timothy A. LaSota, Tiffany & Bosco, P.A., Phoenix, Attorneys for Amicus Curiae Arizona Free Enterprise Club

Carrie Ann Donnell, Sitren Legal, Phoenix, Attorneys for Amicus Curiae Howard Jarvis Taxpayers Association

JUSTICE BERCH authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

JUSTICE BERCH, opinion of the Court:

¶1 We granted review to determine whether a group of legislators who voted against House Bill ("HB") 2010 has standing to challenge whether it was passed in a constitutional manner. Because the group had enough votes to have blocked the bill if passage required a supermajority vote, the group has alleged an injury sufficient to confer standing.

## I. BACKGROUND

¶2 In the Fifty-First Arizona State Legislature, representatives introduced HB 2010 to expand Arizona's indigent healthcare program. HB 2010 includes an assessment on hospitals designed to help fund the healthcare expansion. The Arizona Constitution requires that certain acts that increase state revenues must pass the legislature by a supermajority vote. Ariz. Const. art. 9, § 22(A). During debates over HB 2010, the question

3

arose whether this supermajority requirement applied to the bill, but the legislature decided, by majority vote in each chamber, that it did not.[1] The legislature then passed HB 2010 by a simple majority vote, and the governor signed it into law as A.R.S. § 36-2901.08.

¶3        Thirty-six legislators who voted against the bill—twenty-seven representatives and nine senators—sued to enjoin enforcement of Arizona's healthcare expansion.  They claim that by failing to satisfy the supermajority requirement, the legislature violated the constitution and diminished the effectiveness of their votes.

¶4        The superior court dismissed the plaintiff legislators' claims for lack of standing.  The court held, first, that Article 9, Section 22(D) of the Arizona Constitution gives the legislature discretion to determine whether the supermajority requirement applies.  Second, citing *Bennett v. Napolitano*, 206 Ariz. 520, 81 P.3d 311 (2003), the court determined that the plaintiff legislators lacked standing because they did not suffer an "injury" when the majority of the legislature found the supermajority requirement

---

[1]        Article 9, Section 22(C)(2) excepts from the supermajority requirement "[f]ees and assessments that are authorized by statute, but are not prescribed by formula, amount or limit, and are set by a state officer or agency."  Whether HB 2010 falls within the exception or is instead subject to the supermajority requirement is not now before us.

inapplicable.

**¶5**         The court of appeals reversed. *Biggs v. Cooper*, 234 Ariz. 515,

323 P.3d 1166 (App. 2014).   It held that whether the supermajority

requirement applies depends on the constitution's commands, not on the

legislature's discretion, and consequently the issue is subject to judicial

review.  *Id.* at 520 ¶ 9, 323 P.3d at 1171.   The court then held that if the

plaintiffs are correct on the merits, their votes on HB 2010 were nullified,

and therefore they have standing to challenge the resulting law.  *Id.* at 521

¶ 15, 323 P.3d at 1172 (citing *Coleman v. Miller*, 307 U.S. 433, 438 (1939);

*Bennett*, 206 Ariz. at 526 ¶ 28, 81 P.3d at 318).

**¶6**         We granted review because the petition raises an unresolved

question concerning standing to challenge legislative compliance with the

constitution's requirement that certain laws be enacted by a supermajority.

This legal issue is of statewide importance.

## II.  DISCUSSION

**¶7**         The Arizona Constitution requires that certain revenue-

generating bills be passed by a "vote of two-thirds of the members of each

house of the legislature."  Ariz. Const. art. 9, § 22(A).  The parties do not

dispute that the legislature may determine whether a supermajority vote is

5

required during the legislative process. *See id.* art. 4, pt. 2, § 8 (allowing "[e]ach house . . . [to] determine its own rules of procedure"). The parties further agree that the legislature may not, by majority vote, be the final arbiter of whether the constitutional provision requiring a supermajority vote applies. We agree with the court of appeals that giving the legislature exclusive authority to decide whether Section 22 applies to a particular bill would "eliminate[] Article 9, Section 22's ability to act as a limiting provision on the legislature's power." *Biggs*, 234 Ariz. at 520 ¶ 9, 323 P.3d at 1171 (citing *Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 5 ¶ 13, 308 P.3d 1152, 1156 (2013); *Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 437 (1947)).

¶8        In this case, we decide only whether, once the bill has become law, a group of plaintiff legislators sufficient to have blocked its passage has standing to challenge the law's enactment by only a majority vote. In Arizona, standing is a prudential consideration rather than a jurisdictional one. *Dobson v. State*, 233 Ariz. 119, 122 ¶ 9, 309 P.3d 1289, 1292 (2013) (noting that Article III courts are jurisdictionally limited to "cases or controversies," while Arizona courts are not similarly constrained). To have standing, "a plaintiff must allege a distinct and palpable injury." *Sears v. Hull*, 192 Ariz.

65, 69 ¶ 16, 961 P.2d 1013, 1017 (1998).

**¶9** In *Bennett*, we noted our hesitance to intervene in disputes involving the legislative and executive branches of government. 206 Ariz. at 525 ¶ 20, 81 P.3d at 316. There, we held that individual legislators lack standing because they do not suffer an "injury to a private right or to themselves personally" when they simply complain that their votes were counted, but the effect was nullified by the governor's acts. *Id.* at 526–27 ¶¶ 26–29, 81 P.3d at 317–18. On the other hand, we have found that the legislature as a body suffers a direct institutional injury, and so has standing to sue, when an invalid gubernatorial veto improperly overrides a validly enacted law. *See Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 487 ¶ 15, 143 P.3d 1023, 1028 (2006) (distinguishing *Bennett*, 206 Ariz. at 527 ¶ 29, 81 P.3d at 318).

**¶10** In *Forty-Seventh Legislature*, we relied on *Coleman* in reasoning that if a majority bloc of legislators has sufficient votes to defeat a bill, that bloc may have standing to assert the institutional injury. *Forty-Seventh Legislature*, 213 Ariz. at 486–87 ¶¶ 14–15 n.4, 143 P.3d at 1027–28 n.4 (citing *Bennett*, 206 Ariz. at 525 ¶ 22, 81 P.3d at 316, for the proposition that Arizona courts may find federal case law "instructive"). In *Coleman*, twenty Kansas

state senators voted to ratify an amendment to the United States Constitution, and twenty voted against ratification. 307 U.S. at 436. To break the tie, the lieutenant governor, an executive branch officer, voted in favor of ratification. *Id.* Twenty-one senators and three members of the Kansas House of Representatives then brought suit challenging the lieutenant governor's right to cast the deciding vote. *Id.*

¶11 The United States Supreme Court observed that, if the twenty plaintiff-senators were correct in their allegations, their "votes against ratification ha[d] been overridden and virtually held for naught" because, but for the lieutenant governor overstepping his authority, their votes would have been sufficient to defeat ratification. *Id.* at 438. The Court therefore concluded that the senators had alleged a justiciable injury to their "interest in maintaining the effectiveness of their votes." *Id.*; *see also Raines v. Byrd*, 521 U.S. 811, 823–24 (1997) (distinguishing *Coleman*, observing that "legislators whose votes would have been sufficient to defeat . . . a specific legislative Act have standing to sue . . . on the ground that their votes have been completely nullified").

¶12 Although *Coleman* involved a ratification requiring a majority vote, the Court's reasoning informs this case involving a lawsuit brought

by a minority of the legislature. For if a supermajority requirement applies, the vote of the bloc of plaintiff legislators (or at least the plaintiff representatives) here, as in *Coleman*, would have sufficed to prevent passage of the law. Thus, this bloc of legislators suffered an institutional injury if its votes would have sufficed to defeat the law, but the law was nonetheless enacted.

¶13 The votes of the plaintiff representatives here would have sufficed to defeat enactment, if the supermajority requirement applies. The Arizona House of Representatives contains sixty members. The twenty-seven representatives' negative votes equal more than the one-third plus one vote necessary to have defeated HB 2010 in the House if the bill requires a two-thirds vote for enactment. Thus, passage of the bill by a simple majority vote effectively negated the plaintiff representatives' votes and they, as a bloc, have therefore alleged a "particularized" injury sufficient to confer standing.[2] *See Coleman*, 307 U.S. at 438; *Forty-Seventh Legislature*, 213

---

[2] Because the plaintiff representatives, as a bloc, alleged an injury sufficient to confer standing, the superior court erred in dismissing the action in its entirety, even if it correctly dismissed the action as to other plaintiffs. No party has requested dismissal of the plaintiff senators from this action if only the plaintiff representatives have standing. That issue remains open. *Cf. Coleman*, 307 U.S. at 436 (granting standing to twenty

Ariz. at 486–87 ¶¶ 14–15, 143 P.3d at 1027–28.

**¶14** The superior court nonetheless concluded that the plaintiff legislators' claims were more like the allegations of the individual legislators in *Bennett*, which were held to be insufficient to support standing, than those of the twenty senators in *Coleman*. We disagree. In *Bennett*, four legislative leaders claimed that the governor unconstitutionally vetoed eleven items in the 2004 Budget and three related Omnibus Reconciliation Bills. *Bennett*, 206 Ariz. at 522 ¶¶ 1, 3, 81 P.3d at 313. This Court found that the individual plaintiffs had not shown either specific injury to themselves or nullification of their votes. *Id.* at 526–27 ¶ 28, 81 P.3d at 317–18. We distinguished *Coleman* by noting that "the twenty-one senators in *Coleman* constituted a majority of the Kansas Senate" whose votes were nullified by the interference with the legislative process. *Id.* at 527 ¶ 29, 81 P.3d at 318. That distinction between *Coleman* and *Bennett* applies to the plaintiff legislators here, bringing them within *Coleman*'s exception and conferring standing.

**¶15** Throughout this case, plaintiff representatives have asserted

---

senators who voted against ratification even though the plaintiff group consisted of twenty-one senators and three representatives).

individual rather than institutional standing. In doing so, however, they also have cited *Coleman* and alleged that they had sufficient votes to have defeated HB 2010, if a supermajority vote was required for its passage. As set forth, plaintiff representatives' allegations sufficiently state a claim of particularized injury to the bloc as a whole, though not to each plaintiff legislator individually. This injury to the bloc thus does not confer on the plaintiff legislators individual standing to sue. *Cf. Forty-Seventh Legislature*, 213 Ariz. at 487 ¶ 16 n.5, 143 P.3d at 1028 n.5 (denying individual standing to the Senate President and House Speaker). Their standing flows from their power, as a group, to have defeated the bill, if a supermajority was required for passage.

¶16 The Governor and Director observe that in other cases involving lawsuits by legislators, we have not found standing for legislators unless they have obtained the legislature's approval to sue. *Compare Forty-Seventh Legislature*, 213 Ariz. at 486–87 ¶¶ 14–15, 143 P.3d at 1027–28 (standing found when the entire legislature sued to challenge line-item veto), *with Bennett*, 206 Ariz. at 526–27 ¶¶ 28–29, 81 P.3d at 317–18 (no standing in lawsuit by four legislators to challenge the governor's line-item veto). But when, as here, a minority of the legislature sufficient to prevent

passage of a bill challenges whether the bill was passed in a constitutional manner, that minority may have standing to present its case without first receiving legislative approval or joining the entire legislature in the action. *See Forty-Seventh Legislature*, 213 Ariz. at 486–87 ¶¶ 14–15, 143 P.3d at 1027–28 (citing *Coleman*, 307 U.S. at 436, 438); *Bennett*, 206 Ariz. at 527 ¶ 29, 81 P.3d at 318.

¶17     The Governor and Director argue that the plaintiff legislators had other remedies available to them, such as attempting to repeal the law or seeking a referendum on it.  But the plaintiff legislators need not exhaust all alternative political remedies before filing suit.  *See Forty-Seventh Legislature*, 213 Ariz. at 487 ¶ 17, 143 P.3d at 1028 (failure to exercise political remedies is a "prudential concern" that weighs in favor of denying standing, but does not require it).  If a majority of legislators violates the constitution and thereby injures a minority sufficient to have blocked passage of a bill, we cannot require that minority to pursue the virtually unattainable remedy of overtaking the majority to repeal the law.

¶18     The Governor and Director also encourage us to deny standing because the hospitals subject to the law are more appropriate parties to bring this challenge.  The plaintiff legislators, on the other hand,

argue that the hospitals likely will never challenge the law because they supported its passage and will benefit from it. While the prospect that an issue may otherwise evade review might weigh in favor of granting standing in some cases, *see Sears*, 192 Ariz. at 71–72 ¶ 28 n.9, 961 P.2d at 1019–20 n.9, because we hold that the plaintiff representatives have standing to challenge the law, we need not consider the effect of other potential plaintiffs who might bring their own challenges.

**¶19**    Because the votes of the bloc of plaintiff legislators here would have sufficed to defeat HB 2010 if a supermajority was required for enactment, the group has alleged that its members' votes were effectively nullified. We therefore hold that the superior court erred in dismissing this action for lack of standing by the plaintiff representatives to challenge the constitutional validity of the passage of A.R.S. § 36-2901.08.

**¶20**    Plaintiff legislators have requested an award of attorneys' fees. Because there has been no determination on the merits, we deny an award without prejudice to plaintiff legislators' seeking an award from the superior court should they ultimately prevail in this lawsuit.

### III.  CONCLUSION

**¶21**    We approve in part the result reached by the court of appeals

but vacate paragraphs 15 and 16 of its opinion, reverse the superior court's

order insofar as it concerns standing by the plaintiff legislators, and remand

this case to the superior court for proceedings consistent with this opinion.