NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, ex rel. MARK BRNOVICH,
ATTORNEY GENERAL, *Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF REGENTS,
*Defendant/Appellee.*

No. 1 CA-CV 18-0420
FILED 8-20-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-012115
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brunn W. Roysden, III; Oramel H. Skinner; Evan G. Daniels,
Drew C. Ensign, Robert J. Makar, Dustin D. Romney, Katherine H. Jessen
*Counsel for Plaintiff/Appellant*

Perkins Coie, LLP, Phoenix
By Paul F. Eckstein, Joel W. Nomkin, Shane R. Swindle,
Thomas D. Ryerson, Austin Yost
*Counsel for Defendant/Appellee*

―――――――――――――――

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Maria Elena Cruz joined.

―――――――――――――――

**M O R S E**, Judge:

¶1            The State of Arizona appeals the superior court's May 22, 2018 judgment dismissing the State's complaint with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            In September 2017, the State filed a complaint against the Arizona Board of Regents ("ABOR") for declaratory, injunctive, and special action relief. The complaint asserted five counts of violations of Article 11, Section 6 of the Arizona Constitution ("Counts I-V"), and one count of violation of Arizona Revised Statutes ("A.R.S.") sections 35-143 and -212 ("Count VI").  Specifically, Counts I-V alleged that ABOR's tuition-setting policies and practices violated the Arizona Constitution's requirement that "the instruction furnished [at the university and all other state educational institutions] . . . be as nearly free as possible." Ariz. Const. art. 11, § 6.  Count VI alleged ABOR had, by directing or otherwise permitting the universities in question to offer in-state tuition to students who were not "lawfully present" for purposes of eligibility for in-state tuition or other state or local public benefits, violated A.R.S. §§ 15-1803(B) and -1825(A), failed to collect monies accruing to it or the State as required by A.R.S. § 25-143, and caused the illegal payment of public monies in violation of A.R.S. § 35-212.

¶3            ABOR filed three separate motions to dismiss, asserting that: (1) the Attorney General lacked authority to initiate the lawsuit; (2) Counts I-V presented nonjusticiable political questions; and (3) ABOR was entitled to legislative immunity because the tuition-setting policies that formed the basis of the State's complaint were legislative actions.  The State amended its complaint in January 2018 to seek recovery of illegally spent public monies in addition to the prospective relief sought in the original complaint.

**¶4** After oral argument on the motions, the superior court granted ABOR's first motion to dismiss, concluding the State lacked authority to initiate the lawsuit. After receiving briefing on whether the complaint should be dismissed with or without prejudice, the court dismissed the State's first amended complaint with prejudice. It did not award fees to either party.

**¶5** The State timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶6** The State argues the superior court erred by: (1) granting the Board's first motion to dismiss; and (2) dismissing the first amended complaint with prejudice. For the following reasons, we affirm.

### I. Standard of Review

**¶7** We review dismissals for lack of standing de novo.[1] *Judson C. Ball Revocable Tr. v. Phx. Orchard Grp. I, L.P.*, 245 Ariz. 519, 521-22, ¶ 5 (App. 2018). We also review interpretations of statutes de novo. *Glazer v. State*, 244 Ariz. 612, 614, ¶ 8 (2018).

### II. The State's Request for Injunctive Relief, as It Relates to Count VI, Is Moot.

**¶8** First, we must address ABOR's contention that the State's request for injunctive relief relating to Count VI is moot. We agree that the relief sought is moot.

**¶9** "This Court generally declines to address moot issues as a policy of judicial restraint," but we "will make an exception . . . for matters of public importance or those capable of repetition yet evading review." *Prutch v. Town of Quartzsite*, 231 Ariz. 431, 435, ¶ 10 (App. 2013). "[A] case

---

[1] ABOR's first motion to dismiss, its reply in support of that motion, and the court's final judgment did not specify which section of Arizona Rule of Civil Procedure ("Rule") 12(b) was the basis of the dismissal. However, our supreme court has reviewed similar motions to dismiss as raising issues of standing. *See Ariz. State Land Dep't v. McFate*, 87 Ariz. 139, 141, 148 (1960) (concluding Attorney General lacked standing to initiate action where Attorney General lacked statutory authorization). We accordingly review the superior court's dismissal as one for lack of standing.

becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties." *BT Capital, LLC v. TD Serv. Co. of Ariz.*, 229 Ariz. 299, 300-01, ¶ 9 (2012) (quoting *Sedona Private Prop. Owners Ass'n v. City of Sedona*, 192 Ariz. 126, 127, ¶ 5 (App. 1998)). "[V]oluntary cessation of the questioned practices will not automatically moot the injunctive remedy." *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486 (App. 1981). "Mootness exists in the issuance of injunctions only where events make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* The court must look at "factors which indicate proof of likelihood to engage in future violations," including "past violations, the involuntary cessation of these violations, and their continuance in disregard of the lawsuit." *Id.* "[T]he burden of proof . . . is upon the plaintiff to show a likelihood that the defendant will in the future engage in the conduct sought to be enjoined." *Id.* at 487.

¶10   Here, the State sought injunctive relief to "prevent[] and enjoin[] ABOR from violating the Arizona Constitution and Arizona law" and "require[] ABOR to fulfill its duties as required by Arizona law." As both parties recognize, while this case was being litigated, ABOR voluntarily ceased its policy of offering in-state tuition to those without lawful immigration status. *See* Ariz. Bd. of Regents, Statement from ABOR Chair Bill Ridenour Regarding Arizona Supreme Court Decision in MCCCD Case Prohibiting In-State Tuition for DACA Students (Apr. 9, 2018), https://www.azregents.edu/sites/default/files/news-releases/ Statement from ABOR Chair Bill Ridenour Regarding Arizona Supreme Court Decision in DACA Case_April 9 2018.pdf; *see also State ex rel. Brnovich v. Maricopa Cty. Comty. Coll. Dist. Bd.*, 243 Ariz. 539 (2018). The State has not addressed any of the above-mentioned factors in support of their argument that the issue is not moot. Because ABOR has voluntarily ceased the objected-to conduct and the State has not shown "a likelihood that [ABOR] will in the future engage in the conduct sought to be enjoined," *see Goodyear*, 128 Ariz. at 487, we conclude the State's request for injunctive relief as it relates to Count VI is moot.

### III. The Superior Court Did Not Err by Granting the Board's First Motion to Dismiss.

¶11   Despite our conclusion that the injunctive relief sought by the State relating to Count VI is moot, we may still address the State's arguments regarding the motion to dismiss because the State also sought declaratory and special action relief in its first amended complaint. *See*

*Prutch*, 231 Ariz. at 435, ¶ 11 (noting that separate non-moot claim "is still justiciable and the remedy still available").

**¶12**        The State asserts: (1) the court erred by concluding as a matter of law that the Attorney General lacked authority to bring claims pursuant to A.R.S. § 35-212; (2) A.R.S. § 41-193(A)(1)-(2) provides an independent basis for bringing all six counts and *McFate* should be overruled;[2] and (3) the dismissal cannot be affirmed as to Counts I-V on alternative grounds. Because we affirm the superior court's dismissal for lack of subject-matter jurisdiction, we need not address the remaining two arguments. *See Fappani v. Bratton*, 243 Ariz. 306, 309, ¶ 8 (App. 2017) (stating we will affirm a dismissal if it is correct for any reason).

**¶13**        The Attorney General "may initiate proceedings on behalf of the State . . . but these instances are dependent upon specific statutory grants of power." *McFate*, 87 Ariz. at 144; *see also State ex rel. Woods v. Block*, 189 Ariz. 269, 272 (1997) ("In Arizona, the Attorney General has no common law powers; whatever powers he possesses must be found in the Arizona Constitution or the Arizona statutes.") (internal quotation marks omitted). Section 35-212 authorizes the Attorney General to "bring an action . . . to . . . [e]njoin the illegal payment of public monies" and "[r]ecover illegally paid public monies."  A.R.S. § 35-212(A).

**¶14**        The parties dispute the meaning of "payment" in A.R.S. § 35-212. The State asserts that because ABOR is responsible for expending public money for instruction and in-state tuition is below the cost of providing instruction, ABOR necessarily makes payments of public monies to cover the difference between in-state tuition and the cost of instruction. It argues such payments are equivalent to subsidies, and it cites *McClead v. Pima County*, 174 Ariz. 348 (App. 1992), for the proposition that subsidies qualify as payments in the context of A.R.S. § 35-212.

---

[2]        ABOR argues the State has waived this argument because the State failed to raise it in the superior court.  We disagree because the State raised the issue in its response to the motions to dismiss.  The State concedes that *McFate* controls and acknowledges that this Court cannot overrule *McFate*. *See State v. Gulli*, 242 Ariz. 18, 22, ¶ 21 (App. 2017) (recognizing that this Court is "bound by the decisions of our supreme court and has no authority to overrule or disregard them"). The State indicates that it intends to raise these arguments in a petition to the Arizona Supreme Court.  *See State v. Hickman*, 205 Ariz. 192, 200-01, ¶¶ 37-38 (2003) (discussing factors our supreme court considers when overruling precedent).

**¶15**          We agree with ABOR that collecting tuition does not constitute a "payment" under A.R.S. § 35-212.  The statute cited by the State in the first amended complaint, A.R.S. § 35-143, states that "amounts due any budget unit shall be *collected*" and that "[a]ny person or officer who neglects the *collection* of such fees or monies shall be liable to the state, both personally and on his bond" (emphases added).  This Court has held that "the collection of funds . . . does not establish any identifiable payment that may be prevented or recovered."  *Biggs v. Cooper*, 234 Ariz. 515, 522, ¶ 19 (App. 2014), *aff'd in part, vacated in part on other grounds*, 236 Ariz. 415 (2014).

**¶16**          The State attempts to distinguish *Biggs* by asserting that A.R.S. §§ 15-1626(A)(13)[3] and -1664[4] provide ABOR an "express expenditure power," unlike in *Biggs*.  However, we conclude that this is an irrelevant distinction, because the State's complaint did not challenge ABOR's exercise of that power through payments to the students in question.  Additionally, because the State's complaint referred only to ABOR's collection of fees or monies, rather than to any identifiable payment, the State's citation to *McClead*, 174 Ariz. 348, is inapposite.  *McClead* addressed monthly pension benefits paid to state employees, which, as this Court recognized, were "expenditures" by the state pension fund manager.  *Id.* at 351-52.  Here, the State identifies no similar expenditure.  Because the State did not identify any qualifying "payment" under A.R.S. § 35-212, and the complaint did not cite to any other statute providing the Attorney General with authority to commence the suit, the superior court did not err by dismissing the first amended complaint.

## IV.    The Superior Court Did Not Err by Dismissing the Complaint with Prejudice.

**¶17**          The State argues the superior court erred by dismissing the first amended complaint with prejudice because: (1) the first motion to

---

[3]        Providing that ABOR "shall . . . [a]dopt annually an operating budget for each university equal to the sum of appropriated general fund monies and the amount of tuition and fees approved by [ABOR] and allocated to each university operating budget."

[4]        Providing that "[a]ll monies for the use and benefit of an institution under its jurisdiction shall be expended under the direction and control of [ABOR] for the support and maintenance of such institution, buildings and grounds, and for any other purpose the board deems expedient if not inconsistent with provisions of any appropriations."

dismiss raised only jurisdictional challenges; and (2) the superior court did not reach the merits of the claims alleged in the complaint.

**¶18**        "[A]ll involuntary dismissals are with prejudice unless otherwise specified." *Phillips v. Ariz. Bd. of Regents*, 123 Ariz. 596, 598 (1979). Dismissals for lack of jurisdiction, improper venue, or failure to join a party are exceptions to this rule. *Id.*; Ariz. R. Civ. P. 41(b). However, dismissal with prejudice is warranted if amendment of the complaint would not cure its defects. *See Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶¶ 26-27 (App. 1999) (affirming dismissal with prejudice where the court "[could ]not imagine that an amendment could cure the legal defects of [plaintiff's] complaint").

**¶19**        Although, as the State argues, the court dismissed the first amended complaint for lack of jurisdiction, *see Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdiction requirement . . . ."), and therefore dismissal with prejudice was not required by Rule 41(b), we affirm the dismissal with prejudice.  As ABOR argues, no additional amendment could cure the defects of the complaint.  Section 35-212 does not provide a basis for the State's complaint, as discussed *supra* in paragraph 15, and, as the State recognizes, the use of A.R.S. § 41-193(A)(1)-(2) as an independent basis for bringing the complaint is precluded by *McFate. McFate*, 87 Ariz. at 145-46.  Amendment would accordingly be futile, and the superior court did not err by dismissing the first amended complaint with prejudice.

## V.    Attorneys' Fees and Costs

**¶20**        The State requests its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-348.01 and 35-212.  ABOR also requests its fees pursuant to A.R.S. § 12-348.01.  Because ABOR is "the successful party in the action," A.R.S. § 12-348.01, we award its fees and costs upon its successful compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶21**        For the foregoing reasons, we affirm the superior court's May 22, 2018 judgment dismissing the State's complaint with prejudice.

**M O R S E**, Judge, joined by Presiding Judge Campbell and Judge Cruz, specially concurring:

¶22          As noted above, the State has conceded that its proposed interpretation of A.R.S. § 41-193(A)(2) is foreclosed by *McFate*, 87 Ariz. at 145-46. We concur in this decision because we are bound by *McFate*'s holding that the authority to "prosecute" actions under A.R.S. § 41-193(A)(2) does not authorize the Attorney General to commence or initiate actions. We write separately, however, because *McFate*'s interpretation of "prosecute" in A.R.S. § 41-193(A)(2) appears to be flawed. The decision overlooks substantial evidence of the plain meaning of the phrase in 1953 when the legislature amended the 1939 Code 4-607(a) to authorize the Attorney General to "prosecute and defend" actions, and adopts an interpretation that ascribes different meanings to "prosecute" within the same sentence.

¶23          The *McFate* court acknowledged that "the term 'prosecute' may in some situations, especially with reference to criminal actions, include the power to commence a proceeding," but found that policy-based concerns related to the role of the Attorney General compelled a different interpretation for A.R.S. § 41-193(A)(2). 87 Ariz. at 145-46. It is up to the Arizona Supreme Court to determine whether those concerns continue to support *McFate*'s interpretation and whether legislative acquiescence and *stare decisis* caution against overruling *McFate*. We separately concur only to point out that common usage before and around the time of the 1953 amendment suggests that the term "prosecute" included civil actions and contemplated both the initiation and the continuation of legal proceedings. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 526 (2009) (interpreting a statute based on the understanding of terms at the time of enactment).

¶24          Early Arizona law contains more than one example of the broad construction of "prosecute" encompassing the power to initiate and pursue non-criminal legal remedies. As early as 1909, Arizona territorial law provided that foreign corporations enjoyed the same rights as domestic corporations "to prosecute and defend, and to appear, especially and generally, in any action in any court." *Work v. United Globe Mines*, 12 Ariz. 339, 344 (1909) (quoting par. 913, Civ. Code Ariz. 1901). In 1937, Arizona law authorized the Attorney General to "prosecute and defend in the name of the State all actions necessary to carry out the provisions of the highway code." *State ex rel. Sullivan v. Price*, 49 Ariz. 19, 21 (1937). More significantly, the Enabling Act, through which Arizona was admitted to the United States, provides that it is "the duty of the Attorney-General of the United

States to prosecute, in the name of the United States and in its courts, such proceedings at law or in equity as may from time to time be necessary and appropriate to enforce" the public-land provisions of the Enabling Act. Arizona Enabling Act, ch. 310, 36 Stat. 557, 568-79 (1910).[5]  In all three of these examples, it cannot reasonably be argued that the authority to "prosecute" was limited to criminal matters or that there was no concomitant authority to initiate the actions for which the statutes authorize prosecution.

¶25        Other contemporaneous usage runs contrary to the narrow interpretation of "prosecute" applied by the court in *McFate*.  In *Board of Regents of University and State Colleges v. Frohmiller*, 69 Ariz. 50 (1949), the Arizona Supreme Court used the term "prosecute" to indicate the ability to both initiate and pursue litigation.  69 Ariz. at 54.  The court rejected the State Treasurer's argument that the Board of Regents could not "prosecute" a claim because "[t]he contention that the board of regents is not a party so beneficially interested as to be able to maintain this action is without merit." *Id.*  The *Frohmiller* court also cited *Barry v. Phoenix Union High School*, 67 Ariz. 384 (1948) for the proposition that "a high school district could prosecute mandamus proceeding against a county school superintendent to compel the issuance of a warrant." *Id.*  In both instances, the court used the term "prosecute" to describe a litigant's ability to initiate and pursue legal actions.

¶26        Moreover, Arizona cases prior to 1953, as they do today, referred to Black's Law Dictionary for guidance in interpreting legal terms in statutes.  *E.g.*, *Shumway v. Farley*, 68 Ariz. 159, 165 (1949) (defining "wilfully" in statute); *State Bd. of Barber Examiners v. Walker*, 67 Ariz. 156, 167 (1948) (defining "conveyance" in statute).  And at least one contemporaneous Arizona case cited to Black's Law Dictionary (3d ed.) in concluding that the word "prosecute" could refer to both criminal and civil matters. *State v. Dickens*, 66 Ariz. 86, 92 (1947). The definition of "prosecute" and "prosecution" in Black's Law Dictionary was unchanged between editions published in 1933 and 1951, and provided that prosecution

---

[5] The Enabling Act was accepted and incorporated into the Arizona Constitution, art. 20, par. 12, and our supreme court has referred to the public land provisions of the Enabling Act as "fundamental and paramount law."  *Murphy v. State*, 65 Ariz. 338, 345 (1947).

encompasses both the initiation and continuation of criminal and civil proceedings:

> **PROSECUTE**. To follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. To "prosecute" an action is not merely to commence it, but includes following it to an ultimate conclusion.

> **PROSECUTION**. . . . The term is also frequently used respecting civil litigation, and includes every step in action, from its commencement to its final determination.

Black's Law Dictionary 1450-51 (3d ed. 1933); Black's Law Dictionary 1385 (4th ed. 1951) (citations omitted).

¶27        In light of these authorities, the counter examples cited by *McFate* are not particularly persuasive. *McFate* relied on two cases, *W.T. Rawleigh Co. v. Spencer*, 58 Ariz. 182, 185-86 (1941), and *Forbach v. Steinfeld*, 34 Ariz. 519, 527-28 (1928), for the proposition that the "distinction between the terms 'commence' and 'prosecute' has been noted by this Court." *McFate*, 87 Ariz. at 146. However, in both cases the Arizona Supreme Court simply noted that the use of the words "commenced and prosecuted" in a statute of limitation was necessary because those phrases "are not synonymous," such that if an "action is commenced within the six-year period of limitation and thereafter prosecuted 'with reasonable diligence' it should not be dismissed." *W.T. Rawleigh Co.*, 58 Ariz. at 185 (quoting *Forbach*, 34 Ariz. at 527). Because statutes of limitation must provide a deadline before which litigation must commence, even if the prosecution of that litigation continues afterwards, adding the word "commence" before "prosecute" simply provides two necessary measuring points that could not be accomplished by the use of either word alone. These cases do not stand for the proposition that the authority to prosecute litigation does not include the authority to initiate litigation.

¶28        The *McFate* court also relied on Arizona statutes that authorized the State Land Department to "commence, prosecute, and defend" actions, and authorized the Attorney General to "bring" or "institute" actions. *McFate,* 87 Ariz. at 146. The court reasoned that "where the legislature intended to authorize the Attorney General to initiate proceedings, it has so provided in clear terms." *Id*.

¶29        The "bring" statute cited by *McFate* provides as follows:

> A. An action may be brought in the supreme court by the attorney general in the name of the state upon his relation, upon his own information or upon the verified complaint of any person, in cases where the supreme court has jurisdiction, or otherwise in the superior court of the county which has jurisdiction, against any person who usurps, intrudes into or unlawfully holds or exercises any public office or any franchise within this state.

> B. The attorney general shall bring the action when he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised.

A.R.S. § 12-2041.

¶30　　　　The "institute" statute cited in *McFate* provides that the Attorney General may "institute action in the superior court of the county in which the property is located for recovery of escheats."　A.R.S. § 41-193(C).

¶31　　　　Because both statutes address where such actions should be filed, and not only by whom they may be pursued, it makes sense for the legislation to focus on the initiation of the action.　Moreover, neither statute includes the word "prosecute," so it is difficult to discern how those laws narrow the meaning of "prosecute" in a separate statute.　Finally, if one applied the narrowing logic applied under *McFate*, the grant of authority only to "bring" or "institute" an action in those statutes would imply that the Attorney General lacks authority to continue to prosecute the action once it was filed.　Of course, the opposite construction is the more rational — the authority to "bring" or "institute" an action, just like the authority to "prosecute" an action, contemplates both the initiation and completion of proceedings.

¶32　　　　The remaining statute discussed by *McFate*, 87 Ariz. at 146, involved a statutory grant of authority to the State Land Department to "commence, prosecute and defend all actions and proceedings [related to state lands]. Actions shall be commenced and prosecuted at the request of the department by the attorney general, a county attorney or a special counsel under the direction of the attorney general."　A.R.S. § 37-102(C). The phrasing in this statute could support the narrow construction of "prosecute" suggested by *McFate*, or it could be explained by the context of delegating legal authority to the State Land Department, a county attorney, or special counsel, who would not otherwise have the broad legal authority

conferred on the Attorney General. Regardless, other than providing an example of the legislature including both "commence" and "prosecute," it does not negate the contrary examples above. *See supra* ¶ 24.

**¶33** Finally, the word "prosecute" in Arizona law should be construed consistently. *See Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, 258, ¶ 19 (2006) ("We presume that Congress uses terms consistently."). There is no countervailing textual reason to apply a narrow construction of "prosecute" in A.R.S. § 41-193(A)(2) solely as it applies to the authority of the Attorney General while adopting a broader construction as applied to the Governor's authority. *Contra McFate*, 87 Ariz. at 148 ("The authority here claimed by the Attorney General has been delegated by our Constitution and statutes to the Governor."). To the contrary, in light of the Enabling Act and other sources discussed above, it appears that "prosecute" in A.R.S. § 41-193(A)(2) would have been understood by the legislature in 1953 to include both the initiation and pursuit of proceedings, whether they be at "the direction of the governor or when deemed necessary by the attorney general." A.R.S. § 41-193(A)(2).

