SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| THE FORTY-SEVENTH LEGISLATURE OF THE STATE OF ARIZONA; THE ARIZONA STATE SENATE; THE ARIZONA HOUSE OF REPRESENTATIVES; KEN BENNETT, individually and as President, Arizona State Senate; and JAMES P. WEIERS, individually and as Speaker, Arizona House of Representatives, | ) ) ) ) ) ) ) ) ) ) |
| | Arizona Supreme Court No. CV-06-0079-SA |
| Petitioners, | **O P I N I O N** |
| v. | |
| JANET NAPOLITANO, Governor of the State of Arizona; ARIZONA DEPARTMENT OF ADMINISTRATION and WILLIAM BELL, Director; and ARIZONA STATE PERSONNEL BOARD and JEFF GRANT, Chair, | |
| Respondents. | |

Special Action

**JURISDICTION ACCEPTED; RELIEF GRANTED**
_____

MEAGHER & GEER, P.L.L.P.                                        Scottsdale
        By    Gary L. Lassen
              Thomas H. Crouch
Attorneys for the 47th Legislature of the State of Arizona, the
Arizona State Senate, the Arizona House of Representatives, Ken
Bennett, and James P. Weiers

OFFICE OF THE GOVERNOR                                          Phoenix
        By    Timothy A. Nelson, General Counsel
              Nicole C. Davis, Deputy General Counsel

And

PERKINS COIE BROWN & BAIN P.A.                              Phoenix
    By   Paul F. Eckstein
        Joel W. Nomkin
        Charles A. Blanchard
        Lee Stein
Attorneys for Governor Janet Napolitano

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
    By Mary O' Grady, Solicitor General
Attorneys for Arizona Department of Administration and William
Bell, Director, and Arizona State Personnel Board and Jeff
Grant, Chair

RYLEY CARLOCK & APPLEWHITE                                  Phoenix
    By   N. Warner Lee
        John M. Fry
Attorneys for Amicus Curiae National Conference of State
Legislatures

OSBORN MALEDON, P.A.                                        Phoenix
    By   Diane M. Johnsen
        Thomas L. Hudson
        Diane M. Meyers
Attorneys for Amicus Curiae National Governors Association

---

**M c G R E G O R**, Chief Justice

¶1    This case requires us to decide whether the gubernatorial veto of a portion of a bill related to state employee compensation exceeded the Governor's item veto power under Article 5, Section 7 of the Arizona Constitution. We conclude that the vetoed provision is not an item of appropriation subject to the gubernatorial item veto.

**I.**

¶2    On January 25 and 26, 2006, the Forty-seventh Legislature (the Legislature) passed House Bill 2661 (HB 2661)

as an emergency measure.[1]  Section 1 of HB 2661 expressed the Legislature's intent to grant state employees a pay raise, and Section 6 appropriated money for employee salary adjustments. HB 2661, 47th Leg., 2d Reg. Sess. (Ariz. 2006).  Section 5 of HB 2661 (Section 5) amended Arizona Revised Statutes (A.R.S.) section 41-771 (2004) and exempted certain employees hired after December 31, 2006, from the state merit system.  *Id.*

¶3     On January 30, 2006, the Governor vetoed a portion of Section 5.[2]  The Governor's veto message stated that the item "would have created an additional expense to the state" because exempt employees accrue leave differently than do merit system employees.

¶4     On February 2, 2006, by separate votes, each chamber of the Legislature authorized its presiding officer to bring an action on behalf of the Legislature to challenge the constitutional validity of the Governor's item veto of Section 5.  Senate President Ken Bennett and Speaker of the House James Weiers then brought this special action, acting both individually and on behalf of the Legislature.

---

[1]     The Arizona Constitution requires a two-thirds vote in each legislative chamber to pass a bill as an emergency measure. Ariz. Const. art. 4, pt. 1, § 1(3).

[2]     The Governor item vetoed the portion of Section 5 that adopted a substantive change to A.R.S. § 41-771 by adding a new class of employees to those exempt from the state merit system. The Governor left intact the remaining minor legislative changes made by Section 5.

## II.

¶5     In deciding whether to accept jurisdiction of this special action, we consider several questions. Because resolution of some of these questions turns on whether this action involves legal or political issues, we define first the nature of the issues raised.

¶6     The Legislature asks us to determine whether Section 5 constitutes an "item of appropriation of money" within the meaning of Article 5, Section 7 of the Arizona Constitution. The Legislature argues that if the provision is not an item of appropriation, then the Governor's item veto power under the Arizona Constitution does not extend to Section 5. These issues, asserts the Legislature, are purely legal issues and appropriate for this Court's consideration. The Governor, in contrast, argues that we can resolve the issues presented only by entering the political arena and that the Legislature has attempted to transform a political dispute into a constitutional question.

¶7     "Political questions," broadly defined, involve decisions that the constitution commits to one of the political branches of government and raise issues not susceptible to judicial resolution according to discoverable and manageable standards. *See Baker v. Carr*, 369 U.S. 186, 217 (1962). A determination that an issue is a political question is "very

different from determining that specific [governmental] action does not violate the Constitution. That determination is a decision on the merits that reflects the *exercise* of judicial review, rather than the *abstention* from judicial review that would be appropriate in the case of a true political question." *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 458 (1992). A governor's decision whether to exercise a veto and a legislature's decision whether to attempt to override a veto clearly are political questions; both involve decisions committed to their respective branches of government. This case, however, does not involve a comparable decision because it asks us to decide whether the constitution permitted the Governor to exercise her veto power. The political question doctrine, therefore, provides no basis for judicial abstention in this matter.

¶8        We agree with the Legislature that this petition presents purely legal questions. To determine whether a branch of state government has exceeded the powers granted by the Arizona Constitution requires that we construe the language of the constitution and declare what the constitution requires. Such questions traditionally fall to the courts to resolve. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (recognizing that "[i]t is emphatically the province and duty of the judicial department to say what the law is"). Although each

branch of government must apply and uphold the constitution, our courts bear ultimate responsibility for interpreting its provisions. *See State v. Casey*, 205 Ariz. 359, 362 ¶ 8, 71 P.3d 351, 354 (2003) (stating that interpretation of the state constitution is the courts' province).

¶9      Our conclusion that determining the validity of an item veto presents a justiciable legal issue breaks no new legal ground. We have, on many occasions, considered whether particular gubernatorial actions exceeded a governor's constitutional authority. *See, e.g.*, *Rios v. Symington*, 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992) (reviewing a legislator's challenge to gubernatorial item vetoes); *Black & White Taxicab Co. v. Standard Oil Co.*, 25 Ariz. 381, 218 P. 139 (1923) (reviewing governor's veto of the legislature's tax imposition); *Fairfield v. Foster*, 25 Ariz. 146, 214 P. 319 (1923) (accepting jurisdiction to determine the scope of the governor's veto power); *Callaghan v. Boyce*, 17 Ariz. 433, 153 P. 773 (1915) (reviewing governor's item veto of part of a general appropriations bill). In deciding whether to accept jurisdiction and resolve the substantive issues raised in this action, therefore, we begin with the understanding that the action raises legal, not political, issues.

**A.**

¶10    This Court has original jurisdiction to issue extraordinary writs against state officers.  Ariz. Const. art. 6, § 5; *Rios*, 172 Ariz. at 5, 833 P.2d at 22.  A party seeking such relief must proceed by way of a special action.  *See* Ariz. R.P. Spec. Act. 1.  As we noted in *Rios*, "[i]n limited circumstances, a judicial proceeding by way of special action may be appropriate to test the constitutionality of executive conduct."  172 Ariz. at 5, 833 P.2d at 22.  We thus have jurisdiction to grant the requested relief.

¶11    Whether to accept jurisdiction, however, remains a highly discretionary decision.  State Bar Committee Note, Ariz. R.P. Spec. Act. 3; *see also McKaney v. Foreman ex rel. County of Maricopa*, 209 Ariz. 268, 275 ¶ 35, 100 P.3d 18, 25 (2004).  In this case, several factors argue in favor of accepting jurisdiction.  The issues presented are of public importance: Limiting the actions of each branch of government to those conferred upon it by the constitution is essential to maintaining the proper separation of powers.  *See* Ariz. Const. art. 3 (stating that Arizona's three branches of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others").  Moreover, we last considered the scope of the Governor's item veto authority fifteen years ago in *Rios*, and

the two political branches obviously disagree in good faith about the scope and meaning of that opinion, making the issues raised here likely to recur.[3]  Because of these exceptional circumstances, we conclude that this is one of those rare cases that justify the exercise of our special action jurisdiction.

**B.**

¶12     The fact that this action raises issues appropriate for our consideration does not end our inquiry.  We next consider whether the Legislature has standing to bring this action.  Although "we are not constitutionally constrained to decline jurisdiction based on lack of standing," *Sears v. Hull*, 192 Ariz. 65, 71 ¶ 24, 961 P.2d 1013, 1019 (1998), "[c]oncern over standing is particularly acute" when "legislators challenge actions undertaken by the executive branch," *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 20, 81 P.3d 311, 316 (2003).  Good reason exists for our caution:  "Without the standing requirement, the judicial branch would be too easily coerced into resolving political disputes between the executive and legislative branches, an arena in which courts are naturally reluctant to intrude."  *Bennett*, 206 Ariz. at 525 ¶ 20, 81 P.3d at 316.

¶13     The Governor argues that these petitioners, like those in *Bennett*, lack standing.  In *Bennett*, four state legislators,

---

[3]     See cases cited *supra* ¶ 9.

- 8 -

including the President of the Senate and the Speaker of the House of Representatives, brought a special action to challenge the governor's veto of specific items in a general appropriations bill. *Id.* at 522 ¶ 3, 81 P.3d at 313. They alleged, as do these petitioners, that the governor had exceeded her veto authority under the Arizona Constitution. *Id.* We held that the legislators lacked standing as individuals because they failed to show any particularized injury: "[N]o legislator's vote was nullified by interference in the legislature" and the injury claimed was, "at most, an institutional injury." *Id.* at 526 ¶¶ 24, 26, 81 P.3d at 317. The legislators also failed to establish standing to assert a claim of injury to the legislature as a whole, because the four members of the legislature "ha[d] not been authorized by their respective chambers to maintain th[e] action." *Id.* at 526-27 ¶¶ 24, 29, 81 P.3d at 317-18. Failing to find any prudential concerns that compelled a consideration of the merits, we concluded that *Bennett* was "not the rare case in which waiver of standing [was] proper." *Id.* at 527 ¶ 31, 81 P.3d at 318.

¶14　　The situation here differs in several significant respects from that in *Bennett*. First, in contrast to *Bennett*, here the Legislature has alleged a particularized injury to the legislative body as a whole. The United States Supreme Court considered a similar situation in *Coleman v. Miller*, 307 U.S.

- 9 -

433 (1939),[4] an action brought by twenty-one state senators, twenty of whom had voted against ratifying a proposed constitutional amendment. *Id.* at 436. Because twenty senators also had voted for the amendment, the matter failed to pass. *Id.* The lieutenant governor broke the tie by voting in favor of the resolution, and the twenty senators opposed to ratification alleged that the lieutenant governor's vote exceeded his authority. *Id.* The Court held that the bloc of legislators who voted against ratification had standing to bring the action because their combined votes, sufficient absent the executive vote to defeat ratification, had "been overridden and virtually held for naught . . . ." *Id*. at 438; *cf. Raines v. Byrd*, 521 U.S. 811, 821-22 (1997) (characterizing *Coleman* as holding that legislators who sued as a bloc and had sufficient votes to defeat legislative action had standing to assert a claim of institutional injury). The circumstances we consider here are analogous.

¶15     A majority of the members of the legislature can pass legislation, Ariz. Const. art. 4, pt. 2, § 15, subject to the governor's veto power. If, as the Legislature asserts, the Governor's item veto was unconstitutional and thus invalid, the

---

[4]     Although federal jurisprudence on issues of standing does not bind this Court, we regard federal decisions as instructive. *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 22, 81 P.3d 311, 316 (2003).

Legislature's right to have the votes of a majority given effect has been overridden and the Legislature, as an institution, has sustained a direct injury to its authority to make and amend laws by a majority vote.

¶16    Second, we held in *Bennett* that four of ninety legislators could not bring an action that allegedly belonged to the legislature as a whole "without the benefit of legislative authorization . . . ."  206 Ariz. at 527 ¶ 29, 81 P.3d at 318. In this case, both the House of Representatives and the Senate authorized the Forty-seventh Legislature to challenge the Governor's item veto of Section 5 of HB 2661, making it clear that the Legislature as a body intended to challenge the Governor's action.[5]

¶17    Contrary to the Governor's arguments, the Legislature's failure to attempt to override the item veto does not preclude a finding that it has standing to bring suit.  In *Bennett*, we considered the legislature's failure to attempt an override as a prudential concern that indicated we should not waive the lack of standing present there.  *Id.* at ¶ 34.  In this

---

[5]    The Senate President and House Speaker also seek standing as individuals.  We previously rejected the argument that the President and the Speaker have standing to bring suit as individuals on behalf of the entire legislative body.  *See* *Bennett*, 206 Ariz. at 526-27 ¶ 28, 81 P.3d at 317-18 (holding that legislators lacked standing as individuals to litigate a claim of the legislature as a whole).

- 11 -

case, if the Governor did, in fact, exceed her item veto authority, the Legislature should not be put to the task of attempting to override an invalid veto before being able to challenge an allegedly unauthorized action in court. The alleged injury to the Legislature as a body occurred, if at all, when the Governor vetoed legislation approved by a majority of each house. The existence of the injury does not depend upon and is not affected by whether the Legislature attempted to override the veto.

¶18    Based on these circumstances, we conclude that the Legislature has alleged a direct institutional injury and has standing to challenge the validity of the Governor's item veto of Section 5 of HB 2661.[6]

### III.

¶19    Article 5, Section 7 of the Arizona Constitution defines the governor's item veto power. Under the terms of the constitution, the governor may veto "items of appropriations of money . . . while approving other portions of [a] bill." Ariz. Const. art. 5, § 7. An appropriation is "the setting aside from the public revenue of a certain sum of money for a specified

---

[6]    Because we find that the Legislature as a whole has established standing to bring suit, we need not address the prudential concerns outlined in *Bennett*, 206 Ariz. at 527-29 ¶¶ 31-40, 81 P.3d at 318-20, which allow us to waive the standing requirement.

object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other." *Rios*, 172 Ariz. at 6, 833 P.2d at 23 (quoting *Hunt v. Callaghan*, 32 Ariz. 235, 239, 257 P. 648, 649 (1927)) (internal quotation marks omitted). "[N]o specific language is necessary to make an appropriation, for the test is . . . whether or not the people have expressed an intention that the money in question be paid." *Windes v. Frohmiller*, 38 Ariz. 557, 560, 3 P.2d 275, 276 (1931).

¶20    The setting aside of a certain sum of public revenue can occur in two ways: The legislature can authorize spending from the general fund or it can authorize payments of ascertainable amounts from a special fund.[7] *See Crane v. Frohmiller*, 45 Ariz. 490, 499, 45 P.2d 955, 959 (1935); *accord Ryan v. Riley*, 223 P. 1027, 1029 (Cal. Dist. Ct. App. 1924) (noting that an "appropriation must be specific both as to purpose and amount"). If the legislature chooses to appropriate public revenues by setting aside monies from a defined special fund, "no limit need be stated in the act authorizing the expenditures and specifying for what purpose the money is to be expended." *Crane*, 45 Ariz. at 499, 45 P.2d at 959; *see also*

---

[7]    Neither side suggests that the *Rios* discussion of reductions to or transfers from previously made appropriations, *see Rios v. Symington*, 172 Ariz. 3, 8-9, 833 P.2d 20, 25-26 (1992), applies to the facts of this case.

- 13 -

*Rios*, 172 Ariz. at 8, 833 P.2d at 25 (holding that creation of several special funds were appropriations although the enabling statutes did not themselves specify a sum certain).

¶21       Section 5 amends A.R.S. § 41-771, the statute that identifies those groups of employees who are exempt from the state merit system.  It adds "correctional officers and juvenile correctional officers, state officers and employees who are appointed or employed after December 31, 2006 and who are at a pay grade of twenty-four or above" to the class of exempt employees.

¶22       On its face, Section 5 fails to set aside any sum from the general fund.  That fact, however, does not preclude finding that the statute constitutes an item of appropriation if it sets aside revenue from some other specific limited source.  In *Rios*, for example, we held that A.R.S. § 41-511.26 was an appropriation because when viewed in conjunction with the federal statute, the vetoed section "authorize[d] the creation of a fund" and granted authority to spend the monies in that fund.  172 Ariz. at 8, 833 P.2d at 25.  We concluded that although section 41-511.26 did not specify a sum on its face, the legislative intent to set aside a certain sum for a specified object was clear when we viewed the statute in conjunction with the federal statute incorporated into the text of section 41-511.26.  *Id*.

¶23    Unlike the provisions considered in *Rios*, Section 5 fails to specify any fund from which payment for accrued leave or, more generally, payment to exempt employees may be made. Instead, it merely defines a class of employees that will be excluded from the state merit system.

¶24    The Governor argues that this failure to set aside funds does not disqualify Section 5 from being an appropriation because the "combined effect of the vetoed language and the employment practices statutes [in Title 23] . . . turns the vetoed language into a spending authorization." She asserts that, under current administrative regulations, exempt employees accrue more leave than do merit system employees and, because the state must pay separating employees for accrued leave, Section 5 will impose additional costs to the state unrelated to employee salaries.

¶25    As the Governor correctly points out, A.R.S. § 23-353.B (1995) requires that an employee be paid "in the usual manner all wages due [to] him" upon leaving the service of an employer, and A.R.S. § 23-350.5 (1995) defines wages as including vacation pay. The statutes, therefore, do obligate the state to make certain payments to separating employees. The Governor's argument, however, incorrectly equates the *obligation* imposed by the statutes with an *appropriation* to fulfill the obligation. *See Crane*, 45 Ariz. at 498, 45 P.2d at 959 ("A

promise to make an appropriation is not an appropriation. . . . The utmost that can be claimed for the act under consideration is that it pledges the good faith of the state to the making of an appropriation."); *Millett v. Frohmiller*, 66 Ariz. 339, 344, 188 P.2d 457, 461 (1948) (noting that statute authorizing agency to employ persons did not itself constitute an appropriation). The employment statutes may obligate the state to make certain payments, but they do not set aside any sum of money from the public revenue and thus cannot be regarded as making an appropriation.[8]

¶26      In this case, Section 5, even when considered in conjunction with other statutes, does not set aside a defined amount of public revenue from any specific funding source.  We

---

[8]      Even the alleged fiscal impact of Section 5 results not from the statute but rather from state administrative rules and regulations and from employee manuals adopted by the executive branch.  *See* Ariz. Admin. Code (A.A.C.) R2-5-403.B (non-exempt employees accrue annual leave from 3.7 hours to 6.47 hours bi-weekly, based on the number of years of service); A.A.C. R2-5-403.D (non-exempt employees may accrue up to 240 hours of compensatory leave each calendar year); Arizona Department of Administration, *Human Resources Policies and Procedures* (ADOA Manual), art. 4, § B (2004), *available at* http://www.hr.state.az.us/Homepagelinks/policies/content.htm (exempt employees accrue annual leave at a rate of 6.47 hours bi-weekly and have a maximum accrual of 320 hours of annual leave per calendar year).  Because the amount of annual leave to which employees, both exempt and non-exempt, are entitled is defined in administrative rules and procedures rather than by statute, *see* A.A.C. R2-5-403; ADOA Manual, art. 4, § B, the fiscal impact of Section 5 derives from matters committed to the executive branch, *see* A.R.S. § 41-703 (2004) (indicating that the governor oversees the direction, control, and operation of the Department of Administration).

conclude, therefore, that Section 5 was not subject to the Governor's item veto power.

**IV.**

**¶27** Because Section 5 of HB 2661 is not an appropriation, the Governor's item veto of that provision exceeded her constitutional authority and is invalid. Accordingly, we order that Section 5 be given full force and effect.


_____
Ruth V. McGregor, Chief Justice

CONCURRING:


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice