NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WARREN PETERSEN, et al., *Plaintiffs/Appellees/
Cross-Appellants*,

*v.*

ADRIAN FONTES, *Defendant/Appellant/
Cross-Appellee*.

No. 1 CA-CV 25-0219 A
FILED 01-06-2026
AMENDED PER ORDER FILED 01-08-2026

Appeal from the Superior Court in Maricopa County
No. CV2024-001942
The Honorable Scott A. Blaney, Judge

**AFFIRMED IN PART; REVERSED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Karen J. Hartman-Tallez, Kara Karlson, and Kyle Cummings
*Counsel for Defendant/Appellant/Cross-Appellee*

Statecraft PLLC, Phoenix
By Kory Langhofer and Thomas Basile
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Snell & Wilmer LLP, Phoenix
By Joseph Kanefield and Tracy A. Olson
*Co-Counsel for Plaintiffs/Appellees/ Cross-Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

---

**G A S S**, Judge:

¶1  This appeal involves a challenge to the 2023 Arizona Elections Procedures Manual. The court accelerates its review under Rule 29, Arizona Rules of Civil Appellate Procedure.

¶2  The President of the Arizona Senate and the Speaker of the Arizona House of Representatives bring the challenge on behalf of their chambers. The Legislators argue the Secretary exceeded his authority when he adopted certain provisions of the 2023 Manual. They seek declaratory and injunctive relief to enjoin those provisions. The superior court granted their requested relief in part, ruling against the legislators on when the 2021 amendments to Arizona Election law regarding the active early voting list took effect.

¶3  The court affirms in part and reverses in part. The court reverses the superior court's order enjoining one paragraph in the 2023 Manual's county canvass provision.

**FACTUAL AND PROCEDURAL HISTORY**

¶4  Since the 1980s, the legislature has charged the Secretary with adopting an election procedures manual every 2 years. A.R.S. § 16-452.B. The manual contains rules and procedures for voting in Arizona. A.R.S. § 16-452.A. The Secretary issues an updated manual at the end of each odd-numbered year. A.R.S. § 16-452.B. The Governor and the Attorney General must approve the manual before it takes effect. *Id.* The Secretary submitted the 2023 Manual to the Arizona Attorney General and Arizona Governor. With their approval, the Secretary issued the 2023 Manual in December of that year.

¶5  The Legislators brought this action to enjoin the Secretary from implementing 5 provisions in the 2023 Manual. The 5 challenged provisions relate to:

  1. Statewide Canvasses;

2. County Canvasses;
3. Juror questionnaires;
4. Circulator registrations; and
5. Active early voting lists.

**¶6** The Secretary moved to dismiss, arguing the Legislators lacked standing. The superior court found the Legislators have standing because the legislature authorized them to bring this action and they sufficiently alleged an actual controversy.

**¶7** As to the first 4 challenged provisions, the superior court ruled the Secretary exceeded his statutory authority in adopting those provisions. The superior court thus declared those provisions unenforceable and granted injunctive relief, permanently enjoining the Secretary from promulgating those 4 provisions. The Secretary appeals the superior court's rulings on standing and the 4 enjoined provisions.

**¶8** The superior court agreed with the Secretary on the fifth challenged provision—the active early voting list provision—and ruled the provision did not directly conflict with any constitutional or statutory provision and was within the Secretary's statutory authority. The Legislators cross-appeal that ruling.

**¶9** The court has jurisdiction over the Secretary's timely appeal and the Legislators' timely cross-appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, and 12-2101.A.1.

## DISCUSSION

### I. The Legislators have standing to challenge the 2023 Manual provisions.

**¶10** The Secretary argues the Legislators lack standing under recent Arizona Supreme Court precedent. *See Montenegro v. Fontes*, ___ Ariz. ___, ___ ¶ 19, 576 P.3d 692, 697 (2025). The Legislators rely on the same precedent to challenge the Secretary's argument. The Legislators are correct.

**¶11** The court reviews *de novo* whether a party has standing. *Id.* at 696 ¶ 15. When deciding whether a party has standing, the court assumes without deciding the party is "correct on the merits." *Id.* at 697 ¶ 19. Arizona courts have long recognized the legislature "has standing to challenge actions that inflict institutional injury." *Id.* at 699 ¶ 28. Though Arizona's Constitution does not have an express "case or controversy" requirement,

when the court has resolved "disputes between branches of government, [the court] also required some showing of a particularized injury to establish standing." *Id.* at 696–97 ¶¶ 17–19. But the "[L]egislators need not exhaust all alternative political remedies before filing suit." *Id.* at 699 ¶ 32. (quoting *Biggs v. Cooper ex rel. Cnty. of Maricopa*, 236 Ariz. 415, 419 ¶ 17 (2014) (ruling legislators had standing even if they did not try to repeal a law or refer it to the voters)); *see also Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 487 ¶¶ 17–18 (2006) (ruling legislators had standing even if they did not try to override the Governor's veto).

¶12        The Legislators do not challenge the Secretary's statutory authority to promulgate the 2023 Manual. A.R.S. § 16-452.A provides the Secretary "shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting . . . ." Acting under this authorization, the Secretary promulgated the 4 challenged provisions.

¶13        Instead, the Legislators argue they have an alleged actual injury because the Secretary went too far when including those 4 provisions in 2023 Manual. They argue the Secretary adopted rules that conflict with express statutory provisions, nullified those statutes, set policy beyond that established by the legislature, and encroached on the legislative branch's power as a result. The Legislators thus argue the Secretary violated Arizona's express constitutional separation of powers clause. *See* Ariz. Const. art. 3.

¶14        The Legislators argue they have shown an actual controversy, relying on broad language in *Montenegro*: "[T]he parties here are adversarial to each other over the issues in the lawsuit and have fully, vigorously, and capably argued the law. So we clearly have a case or controversy in the literal sense of the term." *Montenegro*, ___ Ariz. at ___ ¶ 18, 576 P.3d at 697. And as in *Montenegro*, the Legislators here "proceed[ed] under the Uniform Declaratory Judgments Act, which among other things gives the courts 'power to declare rights, status, and other legal relations.'" *Id.* (quoting A.R.S. § 12-1831). And the legislature has standing to seek relief under that uniform act when its "rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise . . . ." *See* A.R.S. § 12-1832. The 2023 Manual has the force of law. *See Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 63 ¶ 16 (2020) (recognizing the election procedures manual has the force of law).

¶15        The Secretary argues the court should find no standing because this case, unlike *Montenegro*, does not involve a delegation in a

voter initiative. *Montenegro* decried that distinction: "The constitutional reservation to the people of the powers of initiative and referendum 'does not in any way affect the division of powers; they remain the same.'" *Montenegro*, ___ Ariz. at ___ ¶ 24, 576 P.3d at 698 (quoting *Tillotson v. Frohmiller*, 34 Ariz. 394, 401 (1928)).

¶16        The case is analogous to *Napolitano*, 213 Ariz. at 484 ¶¶ 4–6. *Montenegro* discussed *Napolitano* and explained, the legislature "challenged the Governor's veto of a portion of a state employee compensation bill." *Montenegro*, ___ Ariz. at ___ ¶ 29, 576 P.3d at 699. And that challenge was enough to show "the legislature 'alleged a particularized injury to the legislature as a whole.'" *Id.* (quoting *Napolitano*, 213 Ariz. at 486 ¶ 14). The governor argued the legislature "lacked standing because it had not attempted to override her veto." *Id.* The Arizona Supreme Court concluded "the existence of the injury does not depend upon and is not affected by whether the Legislature attempted to override her veto." *Id.* (quoting *Napolitano*, 213 at 487 ¶ 17). The issue in *Napolitano* was whether the governor used an executive act to encroach on the legislature's power.

¶17        As a final point, this case requires a different outcome than *Bennett v. Napolitano*, 206 Ariz. 520 (2003). In *Bennett*, the Arizona Supreme Court "ruled that individual legislators did not have standing to challenge certain line-item vetoes by the Governor. The legislators themselves did not claim injury as their votes were not nullified." *Montenegro*, ___ Ariz. at ___ ¶ 28, 576 P.3d at 699 (discussing *Bennett*, 206 Ariz. at 526 ¶ 26). The distinction is pertinent here. In *Bennett*, the Arizona Supreme Court said when a "claim allegedly belongs to the legislature as a whole," four legislators could not allege institutional injury "without the benefit of legislative authorization." *Id.* (quoting *Bennett*, 206 Ariz. at 527 ¶ 29). The Legislators have legislative authorization to bring this action.

¶18        Assuming, as the court must, the Legislators are correct on the merits, they have stated a sufficient institutional injury to confer standing to bring the challenge. *See Montenegro*, ___ Ariz. at ___ ¶ 34, 576 P.3d at 700.

**II.    The Legislators' challenge to the 2023 Manual's statewide canvass provision is moot.**

¶19        In the Secretary's reply brief, the Secretary argues the Legislators' challenge to the statewide canvass provision is moot because the last election under the 2023 Manual has occurred and the results have been canvassed. *See* Ariz. Sec'y of State, State of Arizona Official Canvass (2025). The court directed the Legislators to file a supplemental brief to

address whether the court should consider the issue moot. The Legislators argue the issue is not moot because the Secretary still has a chance to reinsert the provision before the 2025 Manual is issued.

¶20 Generally, the court exercises judicial restraint and refrains from deciding moot questions. *See Kondaur Cap. Corp. v. Pinal Cnty.*, 235 Ariz. 189, 192–93 ¶ 8 (App. 2014). A question becomes moot when an intervening event causes the outcome to have no practical effect on the parties. *Arpaio v. Maricopa Cnty. Bd. of Supervisors*, 225 Ariz. 358, 361 ¶ 7 (App. 2010) (quoting *Sedona Priv. Prop. Owners Ass'n v. City of Sedona*, 192 Ariz. 126, 127 ¶ 5 (App. 1998)).

¶21 The court's application of the mootness doctrine is discretionary, and the court may address moot issues under certain circumstances. *See id.* at 362 ¶ 14. One such circumstance is if "a decision on the substantive issues could affect similar future legislative [or executive] acts." *Id.* (exercising discretion to hear moot issue). Another is if the issue presents a question of "great public importance" and is "capable of repetition while yet evading review." *See Kondaur Cap. Corp.*, 235 Ariz. at 193 ¶ 8 (quoting *Bank of N.Y. Mellon v. De Meo*, 227 Ariz. 192, 194 ¶ 8 (App. 2011)); *see also State ex rel. Corbin v. Ariz. Corp. Comm'n*, 174 Ariz. 216, 218 (App. 1992).

¶22 The challenged statewide canvass provision in the 2023 Manual and the language in the proposed 2025 manual are very different. The Legislators challenge the following statewide canvass provision of the 2023 manual. It reads:

> If the official canvass of any county has not been received by this deadline, the Secretary of State must proceed with the state canvass without including the votes of the missing county (i.e., the Secretary of State is not permitted to use an unofficial vote count in lieu of the county's official canvass).

Ariz. Sec'y of State, 2023 Elections Procedures Manual 252 (2023).

¶23 The Secretary completely revised that provision in the proposed 2025 manual. The provision reads as follows:

> If a Board of Supervisors fails to meet its own statutory duty to canvass an election and transmit the official canvass by its own statutory deadline, the Secretary of State will use all available legal remedies to compel the Board to comply with

Arizona law and protect voters' right to have their votes counted.

Ariz. Sec'y of State, 2025 Elections Procedures Manual 281 (2025).

**¶24** The challenged language in the statewide canvass provision will not appear in the 2025 Manual. And the Secretary's counsel has avowed "the Secretary has no reason to believe that this draft provision will change substantively in the issued version." The Legislators have not argued the statewide canvass provision in the draft 2025 manual raises the same or similar concerns. And if in the future the Secretary takes any action the Legislators believe is not an "available legal remedy," they can seek judicial review based on the Secretary's specific acts.

**¶25** The court thus declines to address the statewide canvass provision as moot.

**III.     The 2023 Manual's county canvass provision tracks Arizona law and does not encroach on the legislature's lawmaking power.**

**¶26** Both sides agree Arizona law says "county boards of supervisors have a duty to canvass and to do so by the statutory deadline." A.R.S. § 16-642.A.1 (setting the deadline when "[t]he governing board of a county shall meet and canvass" for primary and general elections).

**¶27** From that point of agreement, the legislators argue the 2023 Manual takes away the boards' "discretion to 'determine' the vote" under section 16-642.A. The legislators argue the boards have discretion because A.R.S. § 16-643 requires them to canvass the election returns "in public by opening the returns, other than the ballots, and **determining** the vote of the county, by polling places . . . ." (emphasis added). The legislature's use of the word "determining" is the crux of the legislators' argument. To that end, the legislators argue simple mathematical equations involve discretionary calls "[b]ecause boards of supervisors determine the vote of their counties [and] they have discretion over whether to accept returns in the form that they are received." The legislators also argue boards "may reject returns that cannot be clearly understood." But the legislators cite no election statute or authority for those two discretionary acts except to go back to the word "determining." The legislators focus on the word "determining" to expand the boards' limited statutory ability to refuse to canvass the results for reasons other than missing returns from a polling place. *See* A.R.S. § 16-642.C.

**¶28** The Secretary argues the statutes and Arizona precedent show the boards' statutory canvass duty is ministerial and involves no discretion. Unlike the legislators, the Secretary cites longstanding and recent Arizona precedent to support its position: *State v. Osborne*, 14 Ariz. 185, 194 (1912) (saying canvassing is a ministerial act); *Crosby v. Fish*, 259 Ariz. 127, 133 ¶ 18 (App. 2024) (*Crosby II*) (saying the mathematical undertaking in canvassing "does not require the Board to make multiple discretionary decisions or balance goals.").

**¶29** Section 16-642, subsection A establishes the parameters of the county boards' canvassing duty:

> A. The governing body holding an election shall meet and canvass the election as follows:
>
> 1. The governing board of a county shall meet and canvass as follows:
>
> (a) For the primary election, not later than the second Monday after the election.
>
> (b) For the general election, not later than the third Thursday after the election.

Subsection C identifies the one exception allowing for a delay:

> If, at the time of the meeting of the governing body, the returns from any polling place in the election district where the polls were opened and an election held are found to be missing, the canvass shall be postponed from day to day until all the returns are received or until six postponements have been had. The subsection does not apply to the county board of supervisors' canvass of the primary and general election.

**¶30** Section 16-643 requires the board to canvass the election returns "in public by opening the returns, other than the ballots, and determining the vote of the county, by polling places, for each person voted for and the vote for and against each proposed constitutional amendment and initiated or referred measure appearing upon the ballot at such election." A.R.S. § 16-643.

**¶31** The 2023 Manual included the following explanation of the boards' canvassing duty:

The Board of Supervisors may postpone the canvass on a day-to-day basis if the results from any precinct are missing. If precinct results are still missing after six postponements, the Board of Supervisors must canvass the remaining election results. A.R.S. § 16-642(C).

The Board of Supervisors has a non-discretionary duty to canvass the returns as provided by the County Recorder or other officer in charge of elections and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order.[1]

Ariz. Sec'y of State, 2023 Elections Procedures Manual 248 (2023).

¶**32**　　　　The legislators do not challenge the first paragraph, just the second. The second paragraph is consistent with Arizona law.

¶**33**　　　　To begin, the legislature created one exception for boards while performing their canvassing duty: to delay a canvass for missing returns. *See* A.R.S. § 16-642.C. Contrary to what the legislators argue, the legislature did not say boards could reject returns because the county supervisors do not like how the returns were received or could not understand them.

¶**34**　　　　The legislature's decision not to include those and other exceptions means something. Under Arizona Supreme Court precedent, "[t]he canon of construction *expressio unius est exclusio alterius*—that is, the expression of one item implies the exclusion of others—counsels us to construe the legislature's exclusion . . . as intentional." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 529 ¶ 36 (2021). Because the legislature chose not to identify any other circumstances in subsection 16-642.C, the court construes the omission as intentional. *See id.* If the legislature wanted to give the boards broader discretion, it could have said so. And it still can

---

[1] The 2023 Manual says the same about the Secretary's canvassing duty: "The Secretary of State has a non-discretionary duty to canvass the returns as provided by the counties and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order." Ariz. Sec'y of State, 2023 Elections Procedures Manual 252 (2023).

by amending the statute. But the plain language does not give that discretion today.

¶35 Interpreting the statute to limit the boards' discretion is consistent with the statutory charge to determine the canvass based on returns and nothing else. And nothing in the word "determine" expands that narrow duty. Longstanding and even recent Arizona Supreme Court precedent establishes the non-discretionary nature of the boards' canvassing duty. In 1912, the year Arizona became a state, the Arizona Supreme Court said, "Members of a canvassing board, while performing a high public function, act strictly in a ministerial capacity." *Osborne*, 14 Ariz. at 194.

¶36 Consistent with that early understanding, the court recently concluded the boards' canvassing duty was not discretionary. *Crosby II*, 259 Ariz. at 132 ¶ 16. *Crosby II* reached that conclusion because Arizona's election laws "establish[] detailed procedures for conducting a canvass, including for conducting a hand-count audit." *Id.* at 138 ¶ 19 (citing *Ariz. All. for Retired Am., Inc. v. Crosby*, 256 Ariz. 328, 332 ¶¶ 10–11 (App. 2023) (*Crosby I*) (saying canvassing is not a discretionary act because Arizona's election statutes "establish[] detailed procedures for conducting hand audits of electronically tabulated ballots"). In *Crosby II*, Crosby argued legislative privilege attached to his actions regarding a county canvass because it was a discretionary act. *Id.* at 147–48 ¶¶ 9, 17. The court rejected that argument, saying the "duty to canvass the election under A.R.S. § 16-642(A) was not discretionary." *Id.* at ¶ 16 (discussing A.R.S. § 16-642.A). As *Crosby II* explained,

> Canvassing the election results involves adding write-in and early votes to the results from the vote tabulating equipment. *See* A.R.S. § 16-622(A). Such a mathematical undertaking does not require the Board to make multiple discretionary decisions or balance goals. Instead, the Board had to follow the clear instructions outlined in the statute and the court's order, which compelled it to complete the canvass and gave no alternate action. *See* A.R.S. § 16-642(A).

*Id.* at 132–33 ¶ 18.

¶37 The legislators ask the court to diverge from that longstanding precedent and recent reaffirmation of it, arguing the court should interpret the word "determine" to mean discretionary decision making. To begin, the statutes at issue in both *Crosby I* and *Crosby II*

considered the same language. Though the legislators argue the cases involve different issues, they do not explain why the court should interpret the same language differently. If the court were to adopt the legislators' argument, the court would have to disagree with *Crosby I* and *Crosby II*, which the court is not inclined to do.

¶38 Finally, the legislature did not expand the boards' discretion by using the word "determining." To support their position, the legislators rely on an online dictionary at https://www.merriam-webster.com/dictionary/determine. The legislators argue that online dictionary shows "determining" must mean "fix[ing] conclusively or authoritatively," "decid[ing] by choice of alternatives or possibilities," or "com[ing] to a decision about by investigation, reasoning, or calculation." The Arizona Supreme Court often looks to definitions in the 2001 Random House Webster's Unabridged Dictionary (Second Edition). *See Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 15 (2014). In that dictionary, "the most frequently encountered meanings generally come before less common ones." *See* Random House Webster's Unabridged Dictionary xvi (2d ed. 2001) (addressing ordering in section on "HOW TO USE THIS DICTIONARY; . . . III. DEFINITIONS; . . . *Order*"). That dictionary's first definition for "determine" is "to settle or decide (a dispute, question, etc.) by an authoritative or conclusive decision." *Id.* at 542. Consistent with that definition, the first definition in the legislators' selected online dictionary says "determine" means, "to fix conclusively or authoritatively," though the online dictionary does not explain how it prioritizes its definitions. *See Determine*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/determine (last visited Dec. 22, 2025).

¶39 Here, consistent with the statute's plain language, 100 years of precedent, and the most common meaning of the word "determine," the boards are engaging in a ministerial act of **fixing** the election results **conclusively** and **authoritatively**. Nothing more. And the 2023 Manual provisions on county canvasses reflect that narrow act.

## IV. The 2023 Manual's juror questionnaire and circulator registration provisions encroach on the legislature's lawmaking power, but the county canvass and active early voting list provisions do not.

¶40 The Legislators assert facial challenges to 3 other provisions in the 2023 Manual. The superior court ruled in the Legislators' favor on 2 (juror questionnaires and circulator registrations) and in the Secretary's favor on 1 (active early voting lists). To prevail in a facial challenge, the Legislators must show the challenged provision "cannot be constitutionally

enforced under any set of circumstances." *Montenegro*, ___ Ariz. at ___ ¶ 16, 576 P.3d at 696.

¶41 The court reviews *de novo* questions of statutory interpretation. *Aroca v. Tang Inv. Co. LLC*, 259 Ariz. 302, 306 ¶ 12 (2025) (interpreting statutes). A statute's language guides the court's interpretation. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). If the language is unambiguous, the court "must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017). The court "give[s] terms their ordinary and commonly accepted meaning, unless the legislature has provided a specific definition." *JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310 ¶ 9 (App. 2019). "When the plain text of a statute is clear and unambiguous, it controls unless an absurdity or constitutional violation results." *McKenna v. Soto*, 250 Ariz. 469, 472 ¶ 12 (2021) (citation omitted).

## V. Because the NVRA and Arizona's juror questionnaire statute do not conflict, the 2023 Manual's juror questionnaire provision must track Arizona law.

¶42 The Legislators ask the court to strike the 2023 Manual's juror questionnaire provision because it conflicts with A.R.S. § 16-165.A.9(b). The Legislators argue the Secretary misinterpreted the federal statute and federal cases interpreting it.

¶43 The Secretary argues A.R.S. § 16-165.A.9(b) conflicts with 52 U.S.C. § 20507(d)(1)(B)(i), a provision of the NVRA. The Secretary must maintain Arizona's voter registration list. A.R.S. § 16-168.J. Section 16-168.J then requires the Secretary to implement "provisions regarding removal of ineligible voters that are consistent with the [NVRA.]" For that reason, the Secretary argues the 2023 Manual harmonized federal and Arizona law governing voter registration list maintenance "to achieve and maintain the maximum degree of correctness. . . ." A.R.S. § 16-452.A. The Secretary thus argues he was "well within his statutory authority to recognize" the preemptive effect of a federal statute on an Arizona statute and to ensure the 2023 Manual did not conflict with federal law.

¶44 Arizona's statute directs a county recorder to take certain action when the county's jury commissioner or jury manager sends a notice to the county recorder "indicating that the person has stated that the person is not a resident of the county." A.R.S. § 16-165.A.9(b). The statute directs the county recorder as follows:

> Before the county recorder cancels a registration pursuant to this subdivision, the county recorder shall send the person notice by forwardable mail and a postage prepaid preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is a resident of the county and is not knowingly registered to vote in another county or another state. The notice shall inform the person that failure to return the form within thirty-five days will result in the person's registration being canceled. If the person fails to return the notice within thirty-five days the county recorder shall cancel the person's registration.

*Id.* Once the county recorder cancels the voter's registration, the voter must re-register before the person can vote again. *See* A.R.S. § 16-121.01.A (defining requirements for registering to vote); *see also* A.R.S. § 16-152.A (identifying information voter must provide in the form to register).

¶45        Though A.R.S. § 16-165.A.9(b) directs the county recorder to cancel the voter's registration, the 2023 Manual requires the county recorder to put the voter on the inactive voter list. The 2023 Manual says jury commissioners and managers must send a summary report to the county recorder of those summoned jurors who tell the jury commissioner or manager they are not residents of the county. The county recorder then sends those jurors an "initial notice giving the person 35 days to explain the information provided on the jury questionnaire." If the person does not respond within 35 days, the county recorder changes the person's voter registration to inactive rather than cancel it as A.R.S. § 16-165.A.9(b) directs. The county recorder does not cancel a person's registration unless the person does not confirm a residence in the county or does not vote in 2 election cycles. At any time during the next 2 election cycles, the county recorder will reinstate that person's registration if the person contacts the county recorder or appears at a polling place and asks to vote.

¶46        The Secretary argues the NVRA prohibits the State from canceling the person's registration under these circumstances. The NVRA includes a procedure for removing the name of a registrant when the registrant "confirms in writing" they have changed residences. *See* 52 U.S.C. § 20507(d)(1)(A).

> (1) A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant--

(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or

(B)(i) has failed to respond to a notice described in paragraph (2); and

(ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

U.S.C. § 20507(d).

¶47        In deciding the federal and state statutes conflict, the Secretary relied on federal courts' interpretations of that federal statute. *See League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714 (7th Cir. 2021); *see also Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019). Relying on the Seventh Circuit precedent, the Secretary takes the position A.R.S. § 16-195.A.9(b) violates the NVRA because "both as a matter of fact and as a matter of law, the summary report from the jury commissioner does not constitute written confirmation from the voter to the county recorder of change of residence sufficient to comply with the NVRA."

¶48        The Legislators argue the Seventh Circuit did not go that far. True, the Seventh Circuit concluded the NVRA preempts a similar Indiana statute. But ultimately, the Seventh Circuit ruled the NVRA does not require direct communication from the voter before cancelling a voter's registration. On that point, the Seventh Circuit addressed a misunderstanding created by its earlier *Lawson* opinion. *Sullivan* said:

> We see nothing in the NVRA that would prohibit the second method of passing along the voter's choice to Indiana. An authorization-of-cancellation form that a voter personally signs and that is then forwarded to Indiana from another state complies with section 20507(a)(3)(A) of the NVRA. When we stated in [*Lawson*] that the NVRA requires "direct" contact with a voter, we meant that a communication must be generated by the voter to qualify as a "request of the registrant" — not by a third party.

5 F.4th at 732 (emphasis in original).

**¶49** *Sullivan* is correct. At bottom, the NVRA says Arizona cannot cancel a voter's registration based on a change in residence unless the voter "confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered . . . ." *See* 52 U.S.C. § 20507(d)(1)(A). The NVRA does not require the voter to provide the confirmation directly to the county recorder or any other election official. *See Sullivan*, 5 F.4th at 732.

**¶50** Because the Seventh Circuit precedent does not conflict with A.R.S. § 16-165.A.9, the NVRA does not preempt that Arizona statute. Though the county recorder does not receive the information directly from the voter, the NVRA does not require it if the person "confirms in writing." Here, the county recorder sends the notice only when a person signs (under penalty of perjury) a written juror questionnaire saying the person no longer resides in the county. A.R.S. § 16-165.A.9(b). That notice satisfies the NVRA.

**VI.** **The superior court did not err when it ruled the removal notices for the active early voting lists (A.R.S. § 16-544.H.4) applied starting with the 2024 election cycle.**

**¶51** The 2023 Manual says the removal notice statute (A.R.S. § 16-544.H.4) applies starting with the 2024 election cycle, which began on January 1, 2023. The removal notice statute allows the State to remove a voter when "[t]he voter fails to vote an early ballot in all elections for two consecutive election cycles." A.R.S. § 16-544.H.4.

**¶52** An election cycle means:

> [T]he two-year period beginning on January 1 in the year after a statewide general election or, for cities and towns, the two-year period beginning on the first day of the calendar quarter after the calendar quarter in which the city's or town's second, runoff or general election is scheduled and ending on the last day of the calendar quarter in which the city's or town's immediately following second, runoff or general election is scheduled, however that election is designated by the city or town.

A.R.S. § 16-544.S.

It is silent, however, on whether the removal notice process applies to the already-in-progress 2022 election cycle or applies starting with the next complete election cycle. And the legislation contains no retroactivity clause.

15

¶53         The Legislators argue the removal notice statute applies to the 2022 election cycle, which started on January 1, 2021. For that reason, they argue the 2023 Manual unlawfully delays the effective date.

¶54         The Secretary argues the removal notice statute does not apply to the 2022 election cycle because that cycle began before the removal notice statute's September 21, 2021 effective date. For that reason, the Secretary concluded the removal statute applies to the next complete election cycles after the statute's effective date. The 2023 Manual thus has the removal notice statute process start with the 2024 election cycle. The 2024 election cycle started on January 1, 2023. The superior court agreed with the Secretary. We thus affirm.

### 1. Unless the legislature expressly makes a law retroactive, the court presumes it applies prospectively.

¶55         Arizona has long presumed "a statute applies only prospectively from the effective date of the statute." *Krol v. Indus. Comm'n of Ariz.*, 259 Ariz. 261, 267 ¶ 22 (2025). As the Arizona Supreme Court recently explained in *Krol*, the presumption arises out of "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 267–68 ¶ 23 (citation omitted). Under that principle, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]" *Krol*, 259 Ariz. at 268 ¶ 23 (citation omitted). As *Krol* explained, "[R]etroactive statutes raise particular concerns with respect to the legislature's ability to sweep away settled expectations suddenly and without individualized consideration." *Id.* at 268 ¶ 24 (internal quotations deleted). To that point, "[t]he legislature has specifically directed that 'no statute is retroactive unless expressly declared therein.'" *Id.* at 268 ¶ 25 (quoting A.R.S. § 1-244). For that reason, the court applies the presumption against retroactivity unless "the legislature expressly declares that a statute is retroactive . . . ." *Id.* at 268 ¶ 25.

¶56         On retroactivity, the court more recently said:

A statute applies retroactively when it attaches new legal consequences to events completed before the effective date of the statute. But a statute is not necessarily retroactive because it relates to antecedent facts. A substantive statute may not be applied retroactively absent an express directive by the

legislature. But a procedural statute has no such restriction if
it does not affect an earlier established substantive right.

*State v. Danner*, 2 CA-CR 2025-0126-PR, 2025 WL 2970551, at *2 ¶ 10 (App.
Oct. 22, 2025) (cleaned up).

¶57 As the Arizona Supreme Court noted in *Krol*, "The legislature
knows how to provide for the retroactivity of measures that it enacts. In
fact, the legislature included several express retroactivity provisions in acts
passed during the 2021 legislative session." *Krol*, 259 Ariz. 261, 268 ¶ 26
(listing legislation from that session in which the legislature included a
retroactivity clause). The statute in *Krol*, like the statute here, was enacted
during the same 2021 legislative session. And like the statute here, the
statute in *Krol* did not contain a retroactivity clause. And the Arizona
Supreme Court in *Krol* concluded the statute did not apply retroactively. *Id.*
at 276 ¶ 61.

**2. The legislature neither expressly made A.R.S. § 16-544.D
retroactive nor expressly said it would apply to the 2022
election cycle.**

¶58 The active early voter list is "a list of voters to receive an early
ballot by mail for any election for which the county voter registration roll is
used to prepare the election register." A.R.S. § 16-544.A. County recorders
maintain the active early voting lists. *Id.* Once on an active early voting list,
voters remain on it until at least 1 of 4 enumerated removal events occur.
A.R.S. § 16-544.H.1–H.4. The removal event here applies when "[t]he voter
fails to vote an early ballot in all elections for two consecutive election
cycles." A.R.S. § 16-544.H.4. An election cycle is defined as "the two-year
period beginning on January 1 in the year after a statewide general election"
or as otherwise provided "for cities and towns." A.R.S. § 16-544.S.

¶59 For voters who fail "to vote an early ballot in all elections for
two consecutive election cycles," the county recorder must send them
notices asking them whether they would like to remain on the active early
voting list. A.R.S. § 16-544.L. The county recorder must send those removal
notices by January 15 of every odd-numbered year. *Id.* For all voters who
do not respond to the notices within 90 days, the county recorder must
remove them from the active early voting list. A.R.S. § 16-544.M. The
Legislators argue the voters may re-enroll in the active early voting list. *See*
A.R.S. § 16-544.A, C. But the voters would need to re-enroll early enough to
have it take effect for the next election, which means before early voting
begins. *See* A.R.S. § 16-544.F.

**¶60**        Consistent with the Secretary's position, the disputed 2023 Manual provision addresses the issue as follows:

> Because the 2022 election cycle began before S.B. 1485 (2022) took effect and S.B. 1485 does not apply retroactively, the first two full election cycles after S.B. 1485's effective date are the 2024 and 2026 election cycles. Therefore, the first [active early voting list] removal notices must be sent out by January 15, 2027 to [active early voting list] voters who vote by early ballot in zero eligible elections in the 2024 and 2026 election cycles.

Ariz. Sec'y of State, 2023 Elections Procedures Manual 261 (2023).

**¶61**        The Legislators argue the only way to give the law's plain language full effect is for the removal notice apply to any failure to vote in the 2022 and 2024 election cycles, even if those cycles began before the statute's effective date. The Secretary argues the plain language precludes that application because the statute became effective after the 2022 election cycle had begun and the legislation neither said it applied retroactively nor said it would apply to then-ongoing 2022 election cycle.

**¶62**        The Legislators concede A.R.S. § 16-544.H.4 legislation contained no retroactivity clause. And it did not say it would apply to the 2022 election cycle. Even so, they would have the statute apply to voters who failed to vote in elections before the statute's effective date. True, the first federal election in the 2022 cycle occurred in August 2022, after the statute's effective date. But the statute defines election cycle to a "city or town candidate primary or first election . . . ." A.R.S. § 16-544.K.2(a)–(b). Some of those elections occurred in March, May, and August 2021—before the statute's effective date. Under the Legislators' interpretation, the statute would apply retroactively to any failure to vote in those "city or town candidate primary or first election." The Secretary's interpretation does not create the same retroactivity concern.

**¶63**        As with the statute at issue in *Krol*, the legislature applied no retroactivity clause to A.R.S. § 16-544.H.4. If the court were to adopt the Legislator's proposed interpretation, it would have the statute apply retroactively to voters' actions before the effective date of the statute. Based on *Krol* and other Arizona precedents, the court affirms the superior court's ruling because the statute does not apply to the 2022 election cycle.

## VII. The superior court did not err when it concluded the 2023 Manual's circulator registration provision did not track Arizona law.

**¶64** The Legislators argue footnote 58 in the 2023 Manual, which relates to circulator registrations, conflicts with A.R.S. § 19-118.A and -118.B because circulators must strictly comply with those registration requirements under A.R.S. § 19-102.01.A. The Secretary argues footnote 58 tracks Arizona law because it does not change the circulator's obligations or suggest the Secretary—not the courts—will determine strict compliance.

**¶65** Under A.R.S. § 19-118.B, the circulators are subject to registration and what they must include in the registration. Subsection B says the registration must include:

> 1. The circulator's full name, residence address, telephone number and email address.
>
> 2. The initiative or referendum petition on which the circulator will gather signatures.
>
> 3. A statement that the circulator consents to the jurisdiction of the courts of this state in resolving any disputes concerning the circulation of petitions by that circulator.
>
> 4. The address of the committee in this state for which the circulator is gathering signatures and at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions. Service of process is effected under this section by delivering a copy of the subpoena to that person individually, by leaving a copy of the subpoena with a person of suitable age or by mailing a copy of the subpoena to the committee by certified mail to the address provided.
>
> 5. An affidavit from the registered circulator that is signed by the circulator before a notary public and that includes the following declaration:
>
> I, (print name) , under penalty of a class 1 misdemeanor, acknowledge that I am eligible to register as a circulator in the state of Arizona, that all of the information provided is correct to the best of my knowledge and that I have read and

19

understand Arizona election laws applicable to the collection of signatures for a statewide initiative or referendum.

When registering, circulators "must strictly comply with those constitutional and statutory requirements." A.R.S. § 19-102.01.A.

¶66      As for the registration statute, at page 119, the 2023 Manual says:

> The Secretary of State's Office has no obligation to review the substance of circulator registrations to ensure that accurate or proper information has been provided. The circulator remains solely responsible for compliance with all legal provisions.

¶67      The Legislators do not challenge that language. Instead, they challenge the associated footnote 58:

> The requirement to list certain information on the circulator portal does not mean that a circulator's signatures shall be disqualified if the circulator makes a mistake or inconsistency in listing that information (e.g., a phone number or email address that is entered incorrectly; a residential address that doesn't match the residential address listed on that circulator's petition sheets; etc.).

¶68      The Secretary argues footnote 58 merely emphasizes the Secretary is undertaking no new obligations and the circulators' existing obligations remain unchanged. The Legislators argue by adopting footnote 58, the Secretary is declaring certain mistakes or inconsistencies in circulator registrations do not conflict with the strict compliance requirement. The Legislators are correct.

¶69      Even in context, the footnote says failure to comply with the "requirement to list certain information . . . does not mean that a circulator's signatures shall be disqualified . . . ." The footnote then identifies specific items that will not result in disqualification, including "a mistake or inconsistency in listing that information (e.g., a phone number or email address that is entered incorrectly; a residential address that doesn't match the residential address listed on that circulator's petition sheets; etc.)." The Secretary's list in that footnote has the force of law, meaning those enumerated items would not result in disqualification. *See Ariz. Pub. Integrity All.*, 250 Ariz. at 63 ¶ 16. The superior court thus did not err.

## ATTORNEY FEES AND COSTS

¶70 The Legislators request attorney fees and costs under A.R.S. §§ 12-341, -348, -348.01, -1840, and -2030. They also request attorney fees and costs under the private attorney general doctrine. *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989). The Secretary requests attorney fees and costs under A.R.S. §§ 12-341 and -348.01. Because neither the Legislators nor the Secretary prevailed, the court exercises its discretion and denies those requests.

## CONCLUSION

¶71 The court thus affirms the superior court's finding the Legislators suffered an institutional injury sufficient to confer standing. The Legislators' challenge to the 2023 Manual's statewide canvass provision is moot. The court reverses the superior court's order enjoining the 2023 Manual's county canvass provision. The court affirms the superior court's order enjoining the 2023 Manual's juror questionnaire provision and the circulator registration provision. The court also affirms the superior court's order denying the Legislators requested relief for the 2023 Manual's challenged active early voting list provision.

